**Christina GRIMES, Appellant**

v.

**ENTERPRISE LEASING COMPANY OF PHILADELPHIA, LLC.,**
**Appellee.**

Superior Court of Pennsylvania.

Argued Dec. 5, 2012.
Filed March 19, 2013.
Reargument Denied June 11, 2013.

James M. Alexander, Philadelphia, for appellant.

Theodore H. Jobbes, Philadelphia, for appellee.

BEFORE: MUNDY, J., OTT, J., and PLATT, J.*

OPINION BY MUNDY, J.:

Appellant, Christina Grimes (Grimes), appeals from the March 29, 2012 order granting the motion for judgment on the pleadings filed by Appellee, Enterprise Leasing Company of Philadelphia, LLC (Enterprise). After careful review, we reverse the portion of trial court's order granting Enterprise judgment on the pleadings as to Grimes' claim under the Unfair Trade Practices and Consumer Protection Law (UTPCPL).[1] In all other aspects, we affirm.

The trial court summarized the relevant facts and procedural history of this case as follows.

> On December 29, 2010, [Grimes] executed a vehicle rental contract ("Rental Agreement") with Enterprise. [Grimes] declined an optional damage waiver provision that would have rendered the disputed fees inapplicable here. In-
stead, [Grimes] elected to forgo the optional waiver and agreed that if the vehicle were damaged during the rental period, she would pay Enterprise for the repairs, as well as administrative, loss of use, and diminution in value fees. Section Six of the Rental Agreement ("Section Six") explained in detail, the manner in which the fees would be calculated. It is clear from the language in the Rental [A]greement that causing damage to the rental is not a breach of contract. Further, the section of the [A]greement that explains the damage calculation is not a liquidated damages clause intended to compensate Enterprise for damages incurred as a result of a breach.

> The Rental Agreement also contained a Power of Attorney clause. This clause grants Enterprise the power to request payment from the customer's insurance company for damage to a vehicle caused by a customer who refused the damages waiver and later failed to pay for the damage.

> On December 31, 2010, [Grimes] returned the rental vehicle to Enterprise. [Grimes] alleges ... Enterprise['s] employee informed her that she had returned it with a ten to twelve inch scratch on the outer body of the vehicle. The complaint denies neither the existence of the scratch nor that the scratch occurred during ... the rental period. On January 4, 2011, [Grimes] received a letter ... from the Damage Recovery Unit, an Enterprise affiliate, notifying her of reported damage to the vehicle. On January 26, 2011, [Grimes] was sent a second letter which provided her with the itemized total of the damage amount. An estimate for the vehicle

---

* Retired Senior Judge assigned to the Superior Court.

1. 73 P.S. §§ 201–1—201–9.3.

repairs was provided by Moppert Brothers at Blue Bell, Inc., a third party auto-repair shop. The damages total came to $840.42.[1]

According to [Grimes], more than four months passed without any further contact from Enterprise during which time [Grimes] did not pay any of the requested fees. Subsequently, [Grimes] filed a six count complaint against Enterprise, who soon thereafter filed a counterclaim for the $840.42 in unpaid fees arising out of damage to the rental. On November 15, 2011[,] Enterprise filed a *praecipe* to discontinue its counterclaims. Enterprise has further stipulated that no claims against [Grimes] will be pursued. Enterprise [also] filed a motion for judgment on the pleadings.

---

[1] Damage to the vehicle totaled $590.00, Administrative fees totaled $100.00, Loss of Use fees totaled $91.42, calculated at the rate of 3.451 days at $26.50/day at 100% capacity, Diminution in Value fees totaled $59.00.

Trial Court Opinion, 7/3/12, at 1–2.

On March 29, 2012, the trial court granted Enterprise's motion for judgment on the pleadings on all counts raised in Grimes' complaint. On April 23, 2012, Grimes filed a timely notice of appeal.[2]

On appeal, Grimes raises eight issues for our review.

1. In light of Enterprise's discontinuance of its counterclaim, may this Court exercise appellate jurisdiction over [Grimes'] appeal from the March 28, 2012 Order granting Enterprise's motion for judgment on the pleadings that adjudicated all other remaining issues between the parties?

2. Did [Grimes] allege "any ascertainable loss of money or property" in support of her cause of action under Pennsylvania's Unfair Trade Practices and Consumer Protection Law ("UTPCPL") and pecuniary loss in support of her cause of action for breach of contract and her causes of action for declaratory and injunctive relief, based upon her claim that because Enterprise extracted a power of attorney from her and sought to collect fraudulent and excessive damages and fees, she was forced to resist Enterprise's unlawful claims and collection practices?

3. Did [Grimes] state a cognizable cause of action for breach of contract and breach of the duty of good faith and fair dealing, based upon allegations that Enterprise attempted to enforce an unconscionable liquidated damages clause by seeking to collect from [Grimes] excessive damages and fees at disproportionately higher amounts than the actual loss (if any) sustained by Enterprise?

4. Did [Grimes] plead a viable breach of contract claim by alleging that Enterprise sought to enforce a contract of adhesion without disclosing to [Grimes] that the claimed damages and fees had no relationship to the damage (if any) actually incurred by Enterprise?

5. Did [Grimes] sufficiently allege fraudulent or deceptive conduct under the UTPCPL's "catchall" provision by contending that Enterprise made knowingly false statements to deceive [Grimes] into accepting En-

---

2. The trial court did not order Grimes to file a concise statement of errors complained of on appeal pursuant to Pennsylvania Rule of Appellate Procedure 1925(b). The trial court filed its Rule 1925(a) opinion on July 3, 2012.

terprise's alleged damages and fees as lawful?

6. Was [Grimes'] UTPCPL claim sufficiently supported by allegations that Enterprise's misleading and unconscionable contract terms do not fully nor accurately explain that Enterprise charges for damages and fees unrelated to Enterprise's actual damage?

7. Did [Grimes] sufficiently plead justifiable reliance upon Enterprise's unlawful contract language, and upon Enterprise's subsequent fraudulent and deceptive conduct as to the legality of Enterprise's alleged damages and fees, thereby supporting her right to pursue a · UTPCPL claim?

8. Did [Grimes] allege a valid claim for permanent injunctive relief based upon allegations that she cannot be compensated adequately by a damage award due to the threat that Enterprise could enforce its unconscionable contract terms, thereby damaging her good standing with her insurer and/or credit card issuer and adversely impacting her insurance rates and/or credit score?

Grimes' Brief at 6–7.

■ We begin by addressing Grimes' first claim, which pertains to our appellate jurisdiction in this case. On May 22, 2012, this Court filed an order directing Grimes to show cause why the appeal was not interlocutory because "[Enterprise]'s counterclaim may be pending in the lower court." Superior Court Order, 5/22/12, at 1. Grimes filed a response on June 1, 2012, arguing that her appeal was properly before this Court because "[Enterprise] affirmatively discontinued its counterclaim in the [trial] court." Grimes' Response to the Order to Show Cause, 6/1/12, at 1.

Pennsylvania Rule of Appellate Procedure 341 governs the appealability of final orders generally.

**Rule 341. Final Orders; Generally**

**(a) General rule.** Except as prescribed in subdivisions (d), and (e) of this rule, an appeal may be taken as of right from any final order of an administrative agency or lower court.

**(b) Definition of final order.** A final order is any order that:

(1)· disposes of all claims and of all parties[.]

. . .

Pa.R.A.P. 341. This Court has held that "[a] *praecipe* to discontinue constitutes a final judgment." *Levitt v. Patrick,* 976 A.2d 581, 587 (Pa.Super.2009) (citation omitted). As noted above, Enterprise filed a *praecipe* to discontinue its counterclaim in the trial court on November 15, 2011. As a result, we agree with Grimes that we have appellate jurisdiction to decide the remaining issues in this case. *See id.* We now proceed to address the merits of Grimes' remaining issues on appeal.

Grimes avers that the trial court erred in granting Enterprise's motion for judgment on the pleadings. We begin by noting our well-settled standard of review.

Our scope of review on an appeal from the grant of judgment on the pleadings is plenary. Entry of judgment on the pleadings is permitted under Pennsylvania Rule of Civil Procedure 1034, which provides that after the pleadings are closed, but within such time as not to unreasonably delay trial, any party may move for judgment on the pleadings. A motion for judgment on the pleadings is similar to a demurrer. It may be entered when there are no disputed issues of fact and the moving party is entitled to judgment as a matter of law. In determining if there is a dispute as to

facts, the [trial] court must confine its consideration to the pleadings and relevant documents. On appeal, we accept as true all well-pleaded allegations in the complaint.

On appeal, our task is to determine whether the trial court's ruling was based on a clear error of law or whether there were facts disclosed by the pleadings, which should properly be tried before a jury, or by a judge sitting without a jury.

Neither party can be deemed to have admitted either conclusions of law or unjustified inferences. Moreover, in conducting its inquiry, the [trial] court should confine itself to the pleadings themselves and any documents or exhibits properly attached to them. It may not consider inadmissible evidence in determining a motion for judgment on the pleadings. Only when the moving party's case is clear and free from doubt such that a trial would prove fruitless will an appellate court affirm a motion for judgment on the pleadings.

*Guerra v. Redevelopment Auth. of Phila.,* 27 A.3d 1284, 1288–1289 (Pa.Super.2011) (citation omitted).

■ We first address Grimes' second, fifth, sixth and seventh issues regarding her claim under the UTPCPL. We begin by observing that a private cause of action is explicitly allowed under the UTPCPL.

### § 201–9.2. Private actions

(a) Any person who purchases or leases goods or services primarily for personal, family or household purposes and thereby suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment by any person of a method, act or practice declared unlawful by section 3 of this act, may bring a private action to recover actual damages or one hundred dollars ($100), whichever is greater. The court

may, in its discretion, award up to three times the actual damages sustained, but not less than one hundred dollars ($100), and may provide such additional relief as it deems necessary or proper. The court may award to the plaintiff, in addition to other relief provided in this section, costs and reasonable attorney fees.

73 P.S. § 201–9.2(a). This Court recently explained the purpose and scope of private causes of action under the UTPCPL.

The UTPCPL is Pennsylvania's consumer protection law and seeks to prevent unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce. The purpose of the UTPCPL is to protect the public from unfair or deceptive business practices. **Our Supreme Court has stated courts should liberally construe the UTPCPL in order to effect the legislative goal of consumer protection.** The UTPCPL provides a private right of action for anyone who suffers any ascertainable loss of money or property as a result of an unlawful method, act or practice.

*Fazio v. Guardian Life Ins. Co. of Am.,* 62 A.3d 396, 405 (Pa.Super.2012) (emphasis added), *quoting Bennett v. A.T. Masterpiece Homes at Broadsprings, LLC,* 40 A.3d 145, 151 (Pa.Super.2012). "To bring a private cause of action under the UTPCPL, a plaintiff must show that he justifiably relied on the defendant's wrongful conduct or representation and that he suffered harm as a result of that reliance." *Yocca v. Pittsburgh Steelers Sports, Inc.,* 578 Pa. 479, 854 A.2d 425, 438 (2004) (citation omitted). The trial court rejected Grimes' UTPCPL claim on the theory that she had neither pled wrongful conduct nor any ascertainable loss. *See* Trial Court Opinion, 7/3/12, at 3, 5.

In the case *sub judice,* Grimes's complaint alleged a claim under the catchall

provision of the UTPCPL, which reads in relevant part, as follows.

### § 201-2. Definitions

As used in this act.

. . .

(4) **"Unfair methods of competition"** and **"unfair or deceptive acts or practices"** mean any one or more of the following:

. . .

(xxi) Engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding.

73 P.S. § 201-2(4)(xxi). This Court recently held that under the UTPCPL catchall provision, "deceptive conduct which creates a likelihood of confusion or of misunderstanding can constitute a cognizable claim under [the UTPCPL]." *Bennett, supra* at 154–155.

■ In the case *sub judice*, Grimes alleged the following facts in relation to this claim.

51. [Enterprise] engaged in deceptive acts and made misrepresentations to [Grimes] by providing improperly and arbitrarily calculated "invoices" that contained false or no support for claims asserted by [Enterprise] relating to the rental cars.

52. [Enterprise] charged false and excessive administrative fees, loss of use fees, and diminishment of value fees to [Grimes].

53. [Enterprise] perpetrated this scheme of charging for non-existent or falsely inflated damages in order to collect fees from [Grimes].

54. [Enterprise] engaged in this deception and made the misrepresentations intentionally and with knowledge of their falsity.

55. [Grimes] relied on [Enterprise]'s deceptive acts and misrepresentations, including but not limited to the false and inflated invoices.

56. [Enterprise] intentionally and deceptively concealed and misrepresented the actual purpose of the fees as a revenue producing item and charged excessive fees bearing no reasonable relationship to the damages incurred.

57. By intentionally and artificially inflating the costs it incurred under the rental car contracts, and by concealing from [Grimes] the true costs it incurred, [Enterprise] engaged in a deceptive, fraudulent and unlawful course of conduct of the type expressly prohibited by the [UTPCPL].

58. By charging fees under the unconscionable Provision 6, [Enterprise] engaged in the type of deceptive acts expressly prohibited by the [UTPCPL].

59. By threatening and planning to contact [Grimes]'s insurer and credit card issuer to collect the alleged fees at issue under Provision 13, [Enterprise] engaged the type of deceptive acts expressly prohibited by the [UTPCPL].

60. [Enterprise]'s deceptive acts caused [Grimes] to suffer damages.

61. As a result of [Enterprise]'s fraudulent and deceptive practices, under the [UTPCPL], [Grimes] is entitled to recover damages, with accrued interest, plus reasonable expenses including legal fees, statutory penalties, treble damages, and punitive damages.

Grimes's Complaint, 6/20/11, at ¶¶ 51–61.

■ The trial court concluded that Grimes could not prevail on her UTPCPL claim because she "[did] not allege a misrepresentation with respect to the disputed fees." Trial Court Opinion, 7/3/12, at 5. However, Grimes need not specifically allege a misrepresentation. As this Court recently observed, any deceptive conduct will suffice under the UTPCPL's catchall

provision. *See Bennett, supra.* Here, Grimes alleged that Enterprise engaged in deceptive conduct "[b]y intentionally and artificially inflating the costs it incurred under the rental car contracts, and by concealing from [Grimes] the true costs it incurred...." Grimes' Complaint, 6/20/11, at ¶ 57. Then, in attempting to collect the money it believed it was owed, Enterprise "threaten[ed] and plann[ed] to contact [Grimes'] insurer and credit card issuer...." *Id.* at ¶ 59. In our view, these allegations plainly meet the UTPCPL catchall provision's requirement of "fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding." 73 P.S. § 201–2(4)(xxi); *see also Commonwealth by Fisher v. Cole,* 709 A.2d 994, 997 (Pa.Cmwlth.1998) (holding a physician's efforts to collect debts from former patients that were barred by the statute of limitations constituted a violation of the UTPCPL), *appeal denied,* 558 Pa. 611, 736 A.2d 606 (1999).[3] Therefore, we conclude Grimes has pled facts sufficient to state a cause of action for deceptive conduct under the UTPCPL catchall provision.

Grimes next argues that the trial court erred in concluding her UTPCPL claim failed because she did not plead that she suffered any loss.[4] Grimes' Brief at 20. Grimes avers that she incurred costs and fees associated with asserting her rights and protecting herself against Enterprise's alleged deceptive trade practices. Grimes' Brief at 42–43; Grimes' Reply Brief at 2–3; Grimes' Complaint, 6/20/11, at ¶ 60. This Court has held that in determining whether there has been an "[a]scertainable loss [, it] must be established from the factual circumstances surrounding each case...." *Agliori v. Metro. Life Ins. Co.,* 879 A.2d 315, 320 (Pa.Super.2005). We further observe the UTPCPL has a deterrent effect. This is relevant when determining whether there is an ascertainable loss in each case. *Id.* On this issue, we find the analysis set forth in *Agliori* and *Jarzyna v. Home Properties, L.P.,* 763 F.Supp.2d 742 (E.D.Pa. 2011), to be dispositive.[5]

In *Jarzyna,* the plaintiff was a tenant who was informed that his security deposit was not going to be returned to him. *Id.* at 745. The plaintiff filed a complaint against his landlord, who also operated a debt collection agency, alleging a violation of the UTPCPL among other federal claims. The defendants filed a motion to dismiss, asserting in pertinent part, the plaintiff had not alleged any ascertainable loss under the UTPCPL. *Id.* at 749. The Eastern District denied the defendants'

---

**3.** We note that "[t]his Court is not bound by decisions of the Commonwealth Court. However, such decisions provide persuasive authority, and we may turn to our colleagues on the Commonwealth Court for guidance when appropriate." *Petow v. Warehime,* 996 A.2d 1083, 1088 n. 1 (Pa.Super.2010) (citations omitted), *appeal denied,* 608 Pa. 648, 12 A.3d 371 (2010).

**4.** The trial court also noted that "[Grimes] can[not] establish justifiable reliance" in furtherance of her UTPCPL claim. Trial Court Opinion, 7/3/12, at 5. Grimes' claim under the catchall provision of the UTPCPL alleges that Enterprise's conduct was both fraudulent and deceptive. *See* Grimes' Complaint, 6/20/11, at

¶¶ 51, 54–56, 58–61. As this Court recently held in *Bennett,* when a plaintiff alleges a claim under the UTPCPL catchall provision under the theory of deceptive conduct, the plaintiff need not prove the elements of common law fraud, including "induc[ment of] justifiable reliance...." *Bennett, supra* at 152 n. 5, 154–155. Therefore, to the extent that Grimes alleges Enterprise's conduct was deceptive, as opposed to fraudulent, she need not allege justifiable reliance.

**5.** We may look to the published decisions of the federal district courts "[as] persuasive authority[.]" *Dietz v. Chase Home Finance, LLC,* 41 A.3d 882, 886 n. 3 (Pa.Super.2012).

motion, concluding that the plaintiff did suffer a loss.

Defendant argues that although Plaintiff alleged that he leased "goods or services" (i.e., an apartment) for primarily personal, family, or household purposes, Plaintiff has failed to assert that he sustained any ascertainable loss of money or property as a result of Defendant's alleged unlawful conduct. Plaintiff, however, has stated facts that, if true, establish he has sustained an "ascertainable loss." Plaintiff has alleged that his security deposit was unlawfully withheld. (Amended Compl. ¶ 56.) **Additionally, Plaintiff alleges that he was forced to retain counsel to resist FCO's collection efforts and in his prayer for relief requests all reasonable attorneys' fees.**

Based on the foregoing, Defendant's motion to dismiss Count IV will be denied.

*Id.* (emphasis added).

In *Agliori*, the plaintiff's claim was based on MetLife using deceptive trade practices to persuade the decedent to surrender three whole life insurance policies in order to purchase a single universal life insurance policy. *Id.* at 316. Although the trial court agreed that MetLife engaged in deceptive practices in getting the decedent to surrender his whole life policies, the trial court dismissed the UTPCPL claim. *Id.* at 318. The trial court reasoned that because MetLife paid out the amount of the coverage the decedent believed that he had purchased, and the decedent never paid higher premiums than he agreed to, the plaintiff could not show any ascertainable loss under the UTPCPL. *Id.* This Court disagreed and held that such a rule obviates the UTPCPL's purpose.

The crux of the issue in the present case is whether Mr. Donahue suffered

an "ascertainable loss" within the meaning of the UTPCPL, section 201-9.2 and was therefore entitled to damages. The trial court held that Mr. Donahue did not suffer an ascertainable loss because his estate received the benefits of the universal life policy on the terms that he transacted in 1990. Specifically, he thought he was buying life insurance that would provide a $40,000 benefit upon his death, for a cost of $600 annually plus the cash surrender value of his three existing whole life policies. This is in fact exactly what he obtained. . . .

While we understand the trial court's logic, we cannot agree with its conclusion. . . . [A]n assessment of ascertainable loss, as required by section 9.2(a) of the [UTPCPL], can not [sic] be made by examining only the terms of the new policy. It is not sufficient to ask only if Mr. Donahue received what he sought in the transaction, because the whole transaction was based on misrepresentation-and therefore he did not know the true cost to him and what he was potentially losing upon entry into the transaction proposed by Mr. Weber.

. . .

We believe that our decision in this case is supported—if not mandated—by the purpose of the UTPCPL. Decisions by our Supreme Court and this Court have stressed time and again the deterrence function of the statute. **If the court permits the appellee-defendants simply to repay what is owed the consumer under the fraudulently induced contract, the deterrence value of the statute is weakened, if not lost entirely.** We can not [sic] accept such an evisceration of the statutory goals.

*Id.* at 320–322 (internal citations omitted; emphasis added).

Given the instruction from our Supreme Court that courts are to liberally construe the UTPCPL in order to effect the legislative goal of consumer protection and the facts of this case, we conclude the element of loss has been clearly established. Enterprise sought to collect $840.42 from Grimes. Grimes' Complaint, 6/20/11, at ¶ 15, 18. When Grimes disputed the nature and legitimacy of these fees and refused to make payment, Enterprise threatened to unilaterally collect the amount directly from Grimes' insurer as well as her credit card issuer. *Id.* at 59. Grimes then filed suit against Enterprise in an effort to prevent it from collecting these "improper, unlawful and fraudulently" charged fees. Enterprise continued to maintain the fees were proper under its contract with Grimes and filed an Answer with New Matter in response to the complaint. Enterprise also filed a counterclaim against Grimes continuing its efforts to collect the $840.42. Enterprise's Counterclaim, 8/26/11, at ¶ 24. ·

In what appears to be a classic case of "tail wagging the dog", the trial court granted Enterprise's motion for judgment on the pleadings on the basis Grimes had no ascertainable loss, where Enterprise had stipulated that it will not seek to collect any money from Grimes, but only *"if* the [trial c]ourt grant[ed][its] motion for judgment on the pleadings." Enterprise's Motion for Judgment on the Pleadings, 11/15/11, at ¶ 80 (emphasis added). Presumably, if Grimes had not commenced and prosecuted this action, Enterprise would have long since collected the disputed charges. The fact that Enterprise agreed not to seek the $840.42 in question in an effort to prevail in the proceedings below does not negate the existence of an "ascertainable loss" within the meaning of the UTPCPL. *See Fisher, supra.*

Herein, Grimes alleges the same loss as the plaintiff in *Jarzyna.* Grimes alleges that she has incurred costs and fees associated with asserting her rights and preventing Enterprise from collecting its debt. Grimes' Brief at 42–43; Grimes' Reply Brief at 2–3; Grimes' Complaint, 6/20/11, at ¶ 60. In our view, this is sufficient to allege an "ascertainable loss" under the UTPCPL. Grimes was not required under the UTPCPL to sit idly by and wait for Enterprise to collect $840.42 from her in order to assert her rights and attempt to stop Enterprise's alleged deceptive trade practices.

Furthermore, if we permitted Grimes' UTPCPL claim to be dismissed because Enterprise stipulated that it would not attempt to collect the $840.42 from Grimes in order to obtain judgment on the pleadings, then the UTPCPL suffers because "the deterrence value of the statute is weakened, if not lost entirely." *Agliori, supra* at 322. This view is fully consistent with our Supreme Court's consistent reminder that the UTPCPL "should [be] liberally construe[d] ... in order to effect the legislative goal of consumer protection." *See Fazio, supra.* As a result, because Grimes alleged that Enterprise was attempting to collect $840.42 from her through her insurer or credit card company, and she has incurred costs and fees to prevent the same, we conclude Grimes properly pled a claim under the UTPCPL. Therefore, the trial court erred in granting Enterprise judgment on the pleadings as to Grimes' UTPCPL claim.

■ We next address Grimes' third and fourth issues in which she avers that the trial court erred in dismissing her breach of contract claim.[6] Specifically, she argues

---

6. Grimes notes in her brief that her claim for "breach of the duty of good faith and fair dealing is duplicative of [her] breach of contract [claim]." Grimes' Brief at 27 n. 7.

that "[t]his action is based upon the allegations that Enterprise enforced contractual terms that are unconscionable, and therefore unenforceable." Grimes' Brief at 26. As such, "it follows that Enterprise's enforcement of these invalid contractual provisions is tantamount to a breach of its contract with [ ] Grimes." *Id.* Additionally, Grimes avers that Section Six is an unenforceable penalty, which renders it unconscionable. Grimes' Brief at 27. However, Enterprise counters that "[a]llegations that a contract should not be enforced due to unconscionability ... do not support [a plaintiff's] claim for breach of contract." Enterprise's Brief at 22; *see also* Trial Court Opinion, 7/3/12, at 4 (stating, "[a] defendant's enforcement of the express terms of a contract is not a breach and accordingly will not give rise to a breach of contract claim[ ]").

The caselaw in this Commonwealth supports Enterprise's argument. *See Salley v. Option One Mortg. Corp.,* 592 Pa. 323, 925 A.2d 115, 119 (2007) (stating, "doctrine of unconscionability has been applied in Pennsylvania as both **a statutory and a common-law defense** to the enforcement of an allegedly unfair contract or contractual provision[ ]") (emphasis added); *Witmer v. Exxon Corp.,* 260 Pa.Super. 537, 394 A.2d 1276, 1287 (1978) (stating, "[u]nconscionability may only be asserted as a defense in an action on a contract for the sale of goods. It is not a plaintiff's doctrine available for affirmative relief to enjoin the provisions of a lease of real estate[ ]"), *affirmed,* 495 Pa. 540, 434 A.2d 1222 (1981). Grimes does not assert any Pennsylvania caselaw to the contrary.[7] We therefore agree with Enterprise that Grimes cannot assert a breach of contract claim based on the unconscionability of a contractual provision.

■ In her final issue, Grimes avers that the trial court incorrectly held that she was not entitled to injunctive relief. Grimes' Brief at 44.

Injunctive relief is considered an extraordinary equitable remedy and it is to be granted only where the ... party [seeking injunctive relief] has established that immediate and irreparable harm, which cannot be compensated by damages, will result if the injunction is denied. Furthermore, the party seeking to enjoin certain conduct must demonstrate that greater injury would result by refusing the injunction than by granting it.

*Pa. Orthopaedic Soc'y v. Indep. Blue Cross,* 885 A.2d 542, 547 (Pa.Super.2005) (internal citation omitted), appeal denied, 586 Pa. 771, 772, 895 A.2d 1262 (2006). "Ultimately, the grant or denial of a permanent injunction will turn on whether the [trial] court properly found that the party seeking the injunction established a clear right to relief as a matter of law." *Rohm & Haas Co. v. Lin,* 992 A.2d 132, 146 (Pa.Super.2010), *appeal denied,* 610 Pa. 587, 19 A.3d 1052 (2011), *cert. denied,* —— U.S. ——, 132 S.Ct. 852, 181 L.Ed.2d 550 (2011) (internal quotation marks and citation omitted); *see also Peugeot Motors of Am., Inc. v. Stout,* 310 Pa.Super. 412, 456 A.2d 1002, 1008–09 (1983) (stating that in order to show entitlement to a permanent injunction, a plaintiff must show an actual and substantial injury; said injury must be threatened in the future; said injury must also be both substantial and irreparable; and said injury cannot be compensated by money damages).

---

**7.** Grimes' cites *Mann v. TD Bank, N.A.,* 2010 WL 4226526 (D.N.J.2010) in support of her position. However, *Mann* is an unpublished federal case and has no precedential value. *See Dietz, supra.*

Herein, Grimes' pled a claim for injunctive relief only with regard to her UTPCPL claim. *See* Grimes' Complaint, 6/20/11, at ¶¶ 72–75. As discussed above, one of the key criterion in determining eligibility for injunctive relief is there must be harm "which cannot be compensated by damages...." *Pa. Orthopaedic Soc'y, supra; Peugeot Motors of Am., Inc., supra.* However, because we conclude that Grimes has alleged loss with regard to her UTPCPL claim, she has an available remedy at law. As a result, the trial court did not err in granting Enterprise judgment on the pleadings with regard to Grimes' claim for injunctive relief.

To summarize, we hold that Grimes has alleged a viable claim under the catchall provision of the UTPCPL, and the trial court erred in granting Enterprise judgment on the pleadings as to that claim. However, we also conclude the trial court correctly granted Enterprise judgment on the pleadings as to Grimes' claims for breach of contract, for breach of duty of good faith, and for injunctive relief. Accordingly, the portion of the trial court's March 29, 2012 order granting Enterprise judgment on the pleadings as to Grimes' UTPCPL claim is reversed and the case is remanded for further proceedings, consistent with this opinion. As to all other aspects of the trial court's March 29, 2012 order, we affirm.

Order affirmed in part and reversed in part. Case remanded. Jurisdiction relinquished.

Judge PLATT Concurs in the Result.