## Fisher v. Nazareth Ford Inc.

*Robert K.S. Abernathy*, for plaintiff.
*Vivian I. Zumas*, for defendant.

BARATTA, *J.*, June 19, 2014—

## STATEMENT OF REASONS

### Facts and Procedural History

On October 14, 2013, the plaintiff, David Fisher, filed his original complaint. Although exhibits are referenced in this complaint, none of the alleged exhibits were attached.

On December 24, 2013, the defendant, Nazareth Ford Inc., d/b/a Brown-Daub Ford, filed preliminary objections, objecting to the plaintiff's lack of capacity to sue and the legal insufficiency of the complaint. On December 24, 2013, the defendant also filed the affidavit of J. Shauger, general manager and owner of Nazareth Ford Inc., d/b/a Brown-Daub Ford, and two exhibits: a copy of the alleged settlement agreement between the parties and a receipt of the exchange of credit under the settlement agreement.

On January 8, 2014, the plaintiff filed the first amended complaint. Again, no exhibits were attached. On January 31, 2014, the defendant filed preliminary objections to plaintiff's first amended complaint, objecting to the legal insufficiency of the first amended complaint and the plaintiff's failure to include the exhibits as required under Pa.R.C.P. 1019. The defendant filed a memorandum of law in support on the same day.

On February 19, 2014, the plaintiff filed the second amended complaint. The second amended complaint references exhibits "A" though "G." However, plaintiff's counsel failed to attach exhibits "D," "E" and "F" to the complaint.

In the second amended complaint, plaintiff avers that he purchased a used 2009 Chevrolet Aveo (the "vehicle") from the defendant's dealership on February 21, 2012. Prior to the purchase, the defendant allegedly provided the plaintiff with a CARFAX report for the vehicle, which indicated that although the vehicle had been involved in an accident, no structural damages or repairs resulted. The plaintiff alleges that the defendant also made oral assurances as to the condition of the vehicle. As a result, the parties entered into a vehicle installment contract,

under which the plaintiff received the vehicle for the purchase price of $11,979.00.

The plaintiff further avers that he obtained a CARFAX report later that evening that indicated the vehicle had been involved in a serious prior collision that caused extensive structural frame damage on or about October 22, 2011.

Upon learning of the prior condition of the vehicle, the plaintiff returned to the defendant's dealership. The plaintiff alleges that the defendant refused to accept the vehicle, refund his money, or give him a credit. Further, the plaintiff contends that the defendant again represented to him that no structural damage to the car had resulted from the accident. The plaintiff alleges that the defendant demanded that the plaintiff make a down payment on the vehicle according to the agreement of sale, but allowed for the payment to be $500.00 instead of the previously agreed-upon $1,000.00. Allegedly, "[plaintiff] reluctantly made the payment and was asked to sign documentation which defendant told him was required in order to reflect receipt of down payment. ("Exhibit E")" Second amended complaint ¶ 11. We again note that plaintiff failed to attach exhibit "E" to the complaint.

The plaintiff further avers that he was unable to trade the vehicle in for a new purchase at any other dealership because "[the vehicle] had undergone structural frame damage and as a result was virtually valueless." *Id.* at ¶ 13. The plaintiff alleges that he obtained a "damage report" from action auto body on September 6, 2013, which indicated structural frame damage and repairs to the vehicle. On September 23, 2013, the plaintiff obtained an appraisal of the vehicle, which indicated that it was worth $4,000.00 less than it would have been without

the structural frame damage. *Id.* at ¶ 15. As such, the plaintiff alleges that the defendant sold the vehicle to in a "dangerous, unfit, unmerchantable, and unsafe condition," and that he purchased the vehicle based upon the misrepresentations of the defendant. *Id.* at ¶¶ 16-19.

In his second amended complaint, the plaintiff raises the following causes of action: (1) fraud; (2) violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 Pa.C.S.A. § 201-1, et seq. (the "UTPCPL"); (3) negligence; and (4) negligent misrepresentation. The plaintiff also attached: (1) a blank copy of the vehicle installment contract allegedly used during the transaction (exhibit "A"); a copy of the CARFAX vehicle history report that the defendant had allegedly given to the plaintiff prior to the sale, indicating a prior accident in 2011 but no structural damage (exhibit "B"); a second blank copy of the vehicle installment contract (exhibit "C"); and a copy of the CARFAX vehicle history report, indicating that structural damages resulted from the 2011 accident (exhibit "D"). The plaintiff reference exhibits "E," "F" and "G," but did not attach the same to his pleading.

On March 20, 2014, the defendant filed preliminary objections to the plaintiff's second amended complaint. First, the defendant objects that the plaintiff lacks the capacity to sue because he signed the settlement agreement with the defendant, which is enforceable according to the principles of contract law. Second, the defendant raises a preliminary objection in the nature of a demurrer. The defendant argues that (1) the plaintiff had known that the Vehicle was in an accident at the time of purchase and (2) the plaintiff signed a settlement agreement two days after purchased the vehicle and received a $500.00 credit from

the defendant. On April 17, 2014, the defendant submitted a memorandum of law in support of its preliminary objections.

On April 9, 2014, the plaintiff filed an answer to defendant's preliminary objections. Chiefly, the plaintiff argues that although he knew about the prior accident, the defendant concealed from him the extensive structural damage that resulted from that accident. The plaintiff also denies that he signed a settlement agreement; instead, he argues that the $500.00 reduction was applied to the down payment which was required by the defendant. Further, he contends that he "at no time agreed to release defendant of any liability nor did he agree to waive any claims regarding any matter whatsoever." Answer to preliminary objections ¶ 12.

This matter was placed on the argument list of April 29, 2014, and argument was heard.

### Legal Standard

In ruling on preliminary objections in the nature of a demurrer, the trial court may consider no testimony or evidence outside of the complaint. *Mellon Bank, N.A. v. Fabinyi*, 650 A.2d 895, 899 (Pa. Super. 1994) (citation omitted). In ruling upon a demurrer, we must accept as true all well-pleaded allegations and material facts averred in the complaint as well as all reasonable inferences deducible therefrom. *Wurth v. City of Phila.*, 584 A.2d 403, 407 (Pa. Commw. Ct. 1990) (citation omitted). However, when ruling on preliminary objections, although a court must accept as true all clearly-pled facts, there is no such requirement as to a pleader's legal conclusions or mere averments of law. *Santiago v. Pa. Nat'l Mut. Cas. Ins. Co.*, 613 A.2d 1235, 1238-39 (Pa. Super. 1992) (citations

omitted).

In the face of a demurrer, a complaint should only be dismissed in cases that are free and clear from doubt. *Id.* at 1238. If any theory of law will support a claim, preliminary objections should not be sustained as any doubt should be resolved against the objecting party. *Foster v. Peat Marwick Main & Co.*, 587 A.2d 382, 384 (Pa. Commw. Ct. 1991); *Ambrose v. Cross Creek Condos.*, 602 A.2d 864, 869 (Pa. Super. 1992). In order to grant a demurrer, it must be certain from the face of the complaint that the claims will not support recovery under any legal theory. *Mellon Bank*, 650 A.2d at 899; *Eckell v. Wilson*, 597 A.2d 696, 698 (Pa. Super. 1991), *appeal denied*, 607 A.2d 253 (Pa. 1992) (citations omitted).

## Discussion

Standard Pennsylvania Practice 2d § 25:77 discusses the concept of a "speaking demurrer" and its application to preliminary objections:

> When considering a demurrer a court cannot consider matters collateral to the complaint but must limit itself to such matters as appear therein, and an effort to supply facts missing from the objectionable pleading makes the preliminary objection in the nature of a demurrer an impermissible 'speaking demurrer.' A 'speaking demurrer' is defined as one which, in order to sustain itself, requires the aid of a fact not appearing on the face of the pleading objected to, or, in other words, which alleges or assumes the existence of a fact not already pleaded, and which constitutes the ground of objection and is condemned both by the common law and the code system of pleading. A 'speaking demurrer' cannot

be considered in sustaining a preliminary objection.

*See Armstrong Cnty. Memorial Hosp. v. Dep't of Public Welfare*, 67 A.3d 160 (Pa. Commw. Ct. 2013).

Before we discuss the merit of the preliminary objections, we feel compelled to note that defendant filed an affidavit of J. Shauger on December 24, 2013, in which Mr. Shauger set forth assertions that plaintiff came into the defendant dealership on February 23, 2012, with CARFAX reports that the vehicle was in an accident in October in October of 2011. Apparently, the plaintiff wanted a refund and negotiated a settlement with the defendant, which was reduced to writing dated and signed by the defendant. The alleged settlement agreement attached as an exhibit to the Shauger affidavit is a document on Brown-Daub Ford letterhead and bears the signature of the plaintiff. The document sets forth the following:

> I, David Fisher, acknowledge that the 2009 Chevrolet Aveo I have purchased from Brown Daub Ford has two bad car facts reports. I have agreed, after negotiation, to settle this matter with a credit of $500 from Brown Daub Ford for the following VIN, KLITG66Z49B616808.

Affidavit of J. Shauger, exhibit "1" (Dec. 24, 2013).

Upon review of the affidavit and document, it appears that the defendant is assertion the existence of a classic "accord and satisfaction" between the plaintiff and defendant. Further, upon review of the plaintiff's second amended complaint, it is also apparent that the accord and satisfaction document was the very document referenced by plaintiff's counsel in paragraph 11 as the missing exhibit "E." If so, the document seriously erodes the plaintiff's second amended complaint, as an accord and satisfaction

would be an affirmative defense.

However, given that these are preliminary objections, we cannot consider filings and assertions made outside of the complaint, as the document submitted with an assertion that an accord and satisfaction exists constitutes an improper speaking demurrer. The claim of accord and satisfaction is appropriate for an affirmative defense and a motion in summary judgment.

With regard to the preliminary objections, we first look to whether the plaintiff has set forth the required elements for its causes of action in his second amended complaint. The plaintiff set forth four causes of action: (1) fraud, (2) violation of the UTPCPL, (3) negligence, and (4) negligent misrepresentation.

A. Sufficiency of the Plaintiff's Complaint

1. Fraud

In Pennsylvania, allegations of fraud require pleading with particularity. *See* Pa.R.C.P. 1019(b). "Fraud must be averred with particularity by the following elements: 1) a misrepresentation; 2) a fraudulent utterance of it; 3) the maker's intent that the recipient be induced thereby to act; 4) the recipient's justifiable reliance on the misrepresentation; and 5) damage to the recipient proximately caused." *Sevin v. Kelshaw*, 611 A.2d 1232, 1236 (Pa. Super. 1992). Further, "fraud may arise from the making of a knowingly false representation of fact, from an intentional concealment of true facts which is calculated to deceive the other party, or from a nonprivileged failure to disclose facts to the other party." *Id.* This concealment "must be intentional and it must relate to material information." *Id.* Mere silence in the absence of a duty to speak, however, "cannot suffice to

prove fraudulent concealment." *Id.*

In the instant case, the plaintiff alleges in his second amended complaint that the defendant's agents represented to him that "the vehicle had no structural frame damage and that it was free of defects of conditions hampering its use, value or safety." Second amended complaint ¶ 21. The plaintiff further alleges that the defendant's agents concealed the severity of the prior accident and the resulting structural frame damage to the car. *Id.* at ¶¶ 22-23. The plaintiff contends that the defendant had an affirmative duty to reveal this information under 37 Pa. code §§ 301.2(5), (6). *Id.* at ¶ 24. Finally, the plaintiff avers that he justifiably relied on these representations, and that his reliance on such misrepresentations proximately caused monetary and, apparently, mental damages. *Id.* ¶¶ 15, 31-32. As such, we find that the pleadings are legally sufficient with regard to the plaintiff's fraud claim.

### 2. UTPCPL

The plaintiff contends in his second amended complaint that the defendant violated the UTPCPL, including, but not limited to, the following statutory provisions:

(v) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has sponsorship, approval, status, affiliation, or connection that he does not have;

. . .

(vii) Representing that goods or services are of a particular standard, quality or grade, or that goods are of a particular style or model, if they are of another;

. . .

(ix) Advertising goods or services with intent not to sell them as advertised;

. . .

(xxii) Engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding.

73 P.S. §§ 201-2(4)(v), (vii), (ix), (xxii).

A private cause of action is explicitly allowed under the UTPCPL. *See* Section 73 P.S. §201-9.2(a). In *Fazio v. Guardian Life Ins. Co. of Am.*, the Superior Court of Pennsylvania explained the purposes and scope of private causes of action under the UTPCPL as follows:

> The UTPCPL is Pennsylvania's consumer protection law and seeks to prevent unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce. The purpose of the UTPCPL is to protect the public from unfair or deceptive business practices. Our Supreme Court has stated [that] courts should liberally construe the UTPCPL in order to effect the legislative goal of consumer protection. The UTPCPL provides a right of action for anyone who suffers any ascertainable loss of money or property as a result of an unlawful method, act or practice.

*Fazio v. Guardian Life Ins. Co. of Am.*, 62 A.3d 396, 405 (Pa. Super. 2013).

Under the catchall provision of the UTPCPL, "unfair methods of competition" and "deceptive acts or practices" can mean "[e]ngaging in any other fraudulent or deceptive

conduct which creates a likelihood of confusion or of misunderstanding." 73 P.S. § 201-2(4)(xxi). In 1996, the Pennsylvania General Assembly amended the UTPCPL and revised the catch-all provision to add "deceptive conduct" as a prohibited practice. *Bennett v. A.T. Masterpiece Homes at Broadsprings, LLC*, 40 A.3d 145 (Pa. Super. 2012). Deceptive conduct "which creates a likelihood of confusion or misunderstanding" resulting in an ascertainable loss to the plaintiff thus creates a cognizable claim under the UTPCPL. *Grimes v. Enterprise Leasing Co. of Philadelphia, LLC*, 66 A.3d 330, 336 (Pa. Super. 2013).

Further, the UTPCPL must be construed liberally. *See Keller v. Volkswagen of Am., Inc.*, 733 A.2d 642, 646 (Pa. Super. 1999). Therefore, not all the elements of common law fraud must be proven if a plaintiff alleges deceptive conduct under the catch-all provision. *See Chiles v. Ameriquest Mortg. Co.*, 551 F. Supp. 2d 393, 399 (E.D. Pa. 2008). Instead, any allegations of deceptive conduct will suffice for a plaintiff to bring a cause of action under the UPTCPL's catchall provision. *Grimes*, 66 A.3d at 336-37.

Here, the plaintiff pleads that the defendant's representations and omissions, in the nature of the concealment of alleged past structural damage, created a likelihood of confusion or misunderstanding. *See* second amended complaint ¶¶ 16-19, 36. As he alleged fraudulent or deceptive practices by the defendant, the plaintiff has sufficiently pled a cause of action under the UTPCPL falling under the "catch-all" provision, among others. Further, we must interpret the UTPCPL liberally in order to advance the legislative goal of consumer protection. As such, we find the pleadings legally sufficient with regard

to the plaintiff's UTPCPL claim.

### 3. Negligence

"A cause of action in negligence requires allegations that establish the breach of a legally recognized duty or obligation that is causally connected to the damages suffered by the complainant." *Sharpe v. St. Luke's Hospital*, 821 A.2d 1215, 1218 (Pa. 2003). Further, "the primary element in any negligence cause of action is that the defendant owes a duty of care to the plaintiff." *Bilt-Rite Contractors, Inc. v. The Architectural Studio*, 866 A.2d 270, 280 (Pa. Super. 2005).

Here, the plaintiff alleges that the defendant failed to institute policies, train and supervise personnel, inspect the vehicle, and report defects to the plaintiff, despite his duty as a seller of vehicles to do so. *See* second amended complaint ¶ 38. Moreover, the plaintiff avers that this breach of the defendant's duty proximately caused actual monetary and mental damages. *See id.* at ¶¶ 16-19, 39. As such, on the face of the second amended complaint, the plaintiff's cause of action for negligence is legally sufficient.

### 4. Negligent Misrepresentation

Negligent misrepresentation requires proof of: "(1) [a] misrepresentation of a material fact; (2) made under circumstances in which the mispresenter ought to have known of its falsity; (3) with an intent to induce another to act on it; and (4) which results in injury to a party acting in justifiable reliance on the misrepresentation." *Bilt-Rite Construction, Inc.*, 866 A.2d at 277 (referencing *Gibbs v. Erst*, 647 A.2d 882, 290 (Pa. 1994)) (citing Restatement (Second) of Torts § 552). In order for there to be negligent

misrepresentation, "the misrepresentation must concern a material fact and the speaker need not know his or her words are untrue, but must have failed to make a reasonable investigation of the truth of these words." *Id.* Further, one party must owe a duty to the other for there to be a cause of action for negligent misrepresentation. *See id.*

Here, the plaintiff avers that the defendant had a duty to communicate information regarding the condition and safety of the vehicle, as well as the existence of structural damage. *See* second amended complaint § 41. Moreover, the plaintiff contends that the defendant "failed to exercise reasonable care or competence in obtaining or communicating the information." *Id.* Further, the plaintiff contends that this information induced him to buy the vehicle and that he justifiably relied upon this information. *See id.* at ¶ 30. Finally, the plaintiff contends that he suffered damages as a result. *See id.* at ¶¶ 15-19. Therefore, we find that the plaintiff has adequately set forth a legally sufficient claim for negligent misrepresentation.

### B. The Plaintiff's Capacity to Sue

The defendant has brought a preliminary objection regarding the plaintiff's lack of capacity to sue, arguing that under the terms of the settlement agreement, the plaintiff is precluded from bringing suit against it. Under Rule 1028(a)(5) of the Pennsylvania Rules of Civil Procedure, a preliminary objection by be filed on the grounds of lack of capacity of a party to sue. *See* Pa.R.C.P. 1028(a)(5). This preliminary objection cannot be determined from the facts of record. *See* Pa.R.C.P. 1028(c)(2), Note of the civil procedural rules committee. Instead, the lack of capacity of a party to sue must be determined by the evidence, including "by depositions or otherwise." Pa.R.C.P.

1028(c)(2). Further, lack of capacity to sue "refers to the personal disability of a plaintiff by virtue of some statute." *Commonwealth ex rel. Sheppard v. Central Penn Nat'l Bank*, 375 A.2d 874, 877 (Pa. Commw. Ct. 1977).

We view the plaintiff's arguments as essentially asserting an affirmative defense of accord and satisfaction due to the defendant's alleged endorsement and consent to a settlement agreement. *See* affidavit of J. Shauger, exhibit 1. A preliminary objection regarding the lack of capacity to sue "refers to some personal disability of a party to bring an action" and cannot be used in the place of raising an affirmative defense through a new matter in an answer. *Commonwealth ex. rel Sheppard*, 375 A.2d at 877; *see also* Pa.R.C.P. 1030. As such, we overrule the defendant's preliminary objection regarding lack of capacity to sue.

Therefore, the defendant's preliminary objections are overruled.

## ORDER OF COURT

And now, this 19th day of June, 2014, upon consideration of the defendant, Nazareth Ford Inc., d/b/a Brown-Daub Ford's, preliminary objections to the plaintiff, David Fisher's, second amended complaint, and the plaintiff's response thereto, it is hereby ordered that said preliminary objections are overruled.