## Pocono Mountain Charter School v. Shawnee Tabernacle Church

C.P. of Monroe County, No. 6893 CV 2013

*Christopher S. Brown*, for plaintiff.
*James A. Swetz*, for defendant.

ZULICK, *J.*, July 17, 2014—This is a declaratory judgment action in which the Pocono Mountain Charter School (PMCS) seeks to terminate its lease with its landlord, Shawnee Tabernacle Church, Inc. (Church) and to recover what it alleges was an overpayment of rent. The complaint was filed on August 15, 2013. The Church filed an answer and new matter on September 10, 2013. A non-jury trial was held on March 18, 2014 and both parties presented testimony and exhibits. The parties were given leave to file briefs after the transcript was prepared.

## FINDINGS OF FACT

1. Pocono Mountain Charter School is a nonprofit, publicly funded public school, it operates under the Pennsylvania Charter School Law, 24 P.S. § 17-1701-A, et seq.

2. PMCS is located at 16 Carriage Square, Tobyhanna, Pennsylvania, in a building which it leases from Shawnee Tabernacle Church.

3. On August 8, 2012, PMCS and the Church entered into a lease agreement for the Carriage Square property. *See* exhibit P-1. This lease superseded the parties' previous lease. *See* exhibit P-5.

4. The term of the lease agreement is stated to be from August 1, 2012 through July 31, 2016. The monthly rent is $88,280.44. Exhibit P-1.[1] The leased premises are stated to be 75,668.95 square feet. *Id.* The rent, calculated on a per square foot basis, is $14.00.

5. The lease was signed by Luddie Chatt, President of the Church Board for the landlord and Lisa Bansa, the President of the PMCS Board for the tenant. *Id.*

6. During the lease negotiations, both parties were represented by counsel. *See* exhibit D-3 at 5-6.

7. The parties each obtained appraisals of the fair rental value of the premises before entering into the lease.

8. Cookie Lancia opined in June, 2007 at the request

---

1. The lease agreement states in article 1 that the lease term is "from August 1,1, (sic) 2012 to July 31, 2016." The base rent is stated in paragraph 1.4 to be "$5,296,826.50 payable in sixty (60) equal monthly installments of Eighty-eight Thousand Two Hundred Eighty and 44/100." *Id.* Lease agreement. This article is inconsistent; the term is stated to be four years but the monthly rental is payable over a five year term. The parties appeared to accept the five year term and the $88,280.44 monthly rental payments.

of the Church, that the property's fair market rental value was $12-$14 per square foot. Exhibit P-7.

9. In September, 2008, the property was appraised for the Church by Moyer Realty Advisors, LLC. That appraisal determined the fair market rental value of the school property was $14.50 per square foot. *See* exhibit D-2. Thomas Tierney, the appraiser, determined that the rented area of the Carriage Square property was approximately 65,000 square feet. *Id.* at 21.

10. In December, 2011, the property was appraised for PMCS by Jean A. Innamorati. Ms. Innamorati opined that the fair market rental value of the property was $15.00 per square foot. *See* exhibit P-8. Ms. Innamorati determined that the leased area was roughly 65,000 square feet. *Id.* at 10.

11. In April, 2013, following a deadlock of the board of directors of PMCS, Alan Price Young, Esq. was appointed by this court as the custodian of PMCS. N.T. at 11-12.

12. Mr. Young, upon becoming custodian, concluded that PMCS was paying excessive rent to the Church. *Id.* at 18-19. *See also* Exhibit P-2.

13. Mr. Young decided to stop paying the rent after July, 2013. *Id.* at 22.

14. Mr. Young had a further appraisal done for the Carriage Square property by Joseph C. Fisher. Mr. Fisher opined in his report of August 15, 2013 that the property had a fair rental value of $5.00 per square foot. *See* exhibit P-9.

15. Mr. Fisher also determined that the Church building was 63,535 square feet, of which 61,816 square feet were

leased to PMCS. *Id.* at 14-15, "Table 1."

16. The minutes of the PMCS Board do not reflect that the board approved the 2012 lease agreement. *See* exhibit P-3.

17. PMCS's bylaws require an affirmative vote of the majority of the Trustees to: move to a new building or enter into contracts for an amount exceeding $4,000.00. *See* exhibit P-4, PMCS Bylaws, article V, duties 1) at page 11.

## DISCUSSION

PMCS seeks a declaratory judgment that a) the parties' lease is a tenancy at will pursuant to 68 P.S. § 250.202; and that b) the rent requirement of the lease agreement exceeds fair rental value and is therefore unconscionable or is based upon mutual mistake.

. Enforceability of the Lease Agreement

The August, 2012 lease agreement was signed on behalf of PMCS, by "L. Bansa," president of PMCS, on August 8, 2012. NT 22-24. PMCS concedes that Lisa Bansa was the president of the PMCS Board at the time, but argues that board minutes do not reflect that Ms. Bansa had board approval when she signed the lease agreement. Board minutes from July and August, 2013 do not contain a resolution authorizing the new lease agreement. NT 27, plaintiff's exhibit 3.

The Pennsylvania Landlord -Tenant Act of 1951 provides:

§ 250.202. Leases for more than three years

Real property, including any personal property thereon,

may be leased for a term of more than three years by a landlord to a tenant or by their respective agents lawfully authorized in writing. Any such lease must be in writing and signed by the parties making or creating the same, otherwise it shall have the force and effect of a lease at will only and shall not be given any greater force or effect either in law or equity, notwithstanding any consideration therefor, unless the tenancy has continued for more than one year and the landlord and tenant have recognized its rightful existence by claiming and admitting liability for the rent, in which case the tenancy shall become one from year to year.

68 P.S. § 250.202.

PMCS points out that the act requires an agent's authority to be in writing for a lease exceeding three years. *Id.* The 2012 lease was for a term of four years, until July 31, 2016, "although the term of the lease shall end if the charter school is forced to close by the Pennsylvania Department of Education Charter Appeal Board." Lease agreement, article 1, term and rent, section 1.1, plaintiff's exhibit 1.

PMCS also cites the Charter School Law which requires the board of trustees to comply with the "Sunshine Act." *See* 24 P.S. § 17-1716-A(c). The Sunshine Act (in its latest iteration) provides that votes of board members must be publicly recorded, *See* 65 Pa.C.S.A. § 705, and that minutes be kept of official actions. *Id.* at § 706.

The Church offered the testimony of Kim Boxley, a former board member of PMCS, who testified that she was present at a board meeting in 2013 when the board voted to accept the lease agreement. She also testified that

she believed that board minutes had been surreptitiously modified by unnamed persons, although she said she could not be sure that this was happening when the lease was discussed. NT 181-182.

The minutes of the PMCS Board are the best evidence of board action. *Commonwealth ex rel. Hetrick v. School Dist. of City of Sunbury*, 6 A.2d 279, 281 (Pa.1939). Here the minutes do not reflect that the board approved the lease agreement. The Statute of Frauds provision of Landlord-Tenant Act will therefore be applied to PMCS' obligations under the lease agreement.

Attorney Young disputed the lease payments in April, 2013; PMCS paid rent under protest from April through July 2013. In August 2013, PMCS began to escrow monthly rent payments. The lease was not in effect for more than one year before payment was disputed, so the lease will be considered to be a tenancy at will.

Reformation of the Lease Agreement

PMCS contends that the lease should be modified because the amount of the rent obligation is unconscionable. However, "[u]nconscionability may only be asserted as a defense in an action on a contract for the sale of goods. It is not a plaintiff's doctrine available for affirmative relief to enjoin the provisions of a lease of real estate." *Witmer v. Exxon Corp.*, 394 A.2d 1276, 1286 (Pa. Super. 1978). The *Witmer* decision holds that unconscionability is not an argument available to a plaintiff-lessee to establish a breach of contract.

The *Witmer* court cited *Von Lehn v. Astor Art Galleries Ltd.*, 86 Misc.2d 1, 380 N.Y.S.2d 532, 541 (1976), as persuasive authority. PMCS argues that this case is no

longer good law in New York and that PMCS would now be allowed to advance an unconscionability theory in that state. This fact, however, does not give the court the authority to disregard the *Witmer* decision. The lease will not be modified under the theory that it is unconscionable.[2]

Finally, PMCS alleges that a mutual mistake took place between the parties in adopting the lease. Specifically, PMCS objects to the rents required by the lease, and the square footage that PMCS is purportedly renting.

"A mutual mistake exists if, at the time a contract is executed, both parties thereto are mistaken as to the existing facts." *A.S. v. Office for Dispute Resolution*, 88 A.3d 256, 266 (Pa. Cmwlth. 2014). "A party wishing to invalidate a contract must 'show fraud or mutual mistake by clear, precise and convincing evidence.'" *Id.* "However, if a mistake is unilateral, there is no basis for rescinding a contract if the unilateral mistake 'is not due to the fault of the party not mistaken but rather to the negligence of the party who acted under the mistake.'" *Id.*

> [T]he contract is voidable by the adversely affected party if three conditions are met. First, the mistake must relate to a "basic assumption on which the contract was made." Second, the party seeking avoidance must show that the mistake has a material effect on the agreed exchange of performances. Third, the mistake must not be one as to which the party seeking relief bears the risk. The parol evidence rule does not preclude the use of prior or contemporaneous agreements or negotiations to establish that the parties were mistaken. However,

---

2. The *Witmer* decision was recently cited with approval in *Grimes v. Enterprise Leasing Co. of Philadelphia, LLC*, 66 A.3d 330, 340 (Pa. Super 2013).

since mistakes are the exception rather than the rule, the trier of the facts should examine the evidence with particular care when a party attempts to avoid liability by proving mistake.

*Step Plan Services, Inc. v. Koresko*, 12 A.3d 401 (Pa. Super. 2010) citing Restatement (Second) of Contracts § 152, Comment: a. Rationale (1981) (emphasis deleted).

Here, there was no mutual mistake as to the price per square foot called for in the lease. The rent under the lease is calculated at a price per square foot of $14.00.[3] Three appraisals were done of the Carriage Square property before the 2012 lease was signed. Mr. Tierney, retained by the Church, determined fair market rent was $14.50 per square foot. Ms. Innamorati, who was hired by PMCS, opined that fair market rent was $15.00 per square foot. Ms. Lancia, also hired by the Church, judged the fair market rent to be between $12.00 and $14.00 per square foot. The actual rent called for by the lease is within the range established by these appraisals.

PMCS argues that the Fisher appraisal provides evidence of a mutual mistake. Mr. Fisher determined fair market rent of the PMCS leased premises to be only $5.00 per square foot. This is a marked difference from the findings of the other appraisers. The Fisher appraisal considered charter school rents in the Philadelphia, Allentown and Bethlehem areas. These schools were paying from $10.16 to 18.00 per square foot rented. *See*

---

3. While the lease does not expressly declare the price per square foot as $14.00, this appears to be the method by which the parties determined the rental value of the property. The yearly rental value ($1,059,365.28) divided by the purported number of square feet (75,668.95) equals a price of $ 13.9999997 per square foot.

plaintiff's exhibit 9, Fisher appraisal, table 5 of charter school leases, page 45. Mr. Fisher did not use these properties alone to do his appraisal because none of the schools were in Monroe County. He also considered rents for commercial rented space of 10,000 sq. ft. or more in these three areas, *Id.*, Table 7, Rental Survey of Single Tenant Properties in Monroe County, 10,000 square feet or more, page 46, and rents of commercial rented space of smaller premises. *Id.* Commercial Rented Space in Monroe County, 1,200 to 3,000 square feet, Table 9, page 47. He used this information to determine the percentage difference between Philadelphia rents, Lehigh Valley rents and Monroe County rents.

Mr. Fisher found that Philadelphia rents were 114 percent higher than Monroe County rents and that Lehigh Valley rents were 12 percent higher than Monroe County rents. He compared what schools in Philadelphia and the Lehigh Valley were renting for and reduced their rents by the percentage difference of rents in Monroe County. He then arrived at his appraised fair rental value of $5.00 per square foot. *Id.* page 48, NT 101.

Thomas Tierney testified for the Church. He had done an appraisal for the Church in November, 2008. He examined leases for charter schools in eastern Pennsylvania, New Jersey and Maryland, finding a school in Monroe County at that time, the Pocono School of Excellence, was paying rent in 2008 of $11.76 per square foot for 22,967 square feet of space. NT 139. He examined other charter school leases that ranged from $13.07 per square foot to $24.98 per square foot. NT 141-148. After reviewing these school properties, he opined that the fair rental value for the PMCS school in 2008 was $14.50 per square foot. NT

149.

The question now before the court is not what the actual fair rental value of the property was at the time the lease was agreed upon in August, 2012. The question here is whether the rent agreed to by the parties was a mutual mistake. In other words, were both parties "mistaken as to the existing facts." *A.S. v. Office for Dispute Resolution*, *supra* at 266. PMCS now takes the position that the school's rental obligation was greatly inflated above market value. This analysis of the situation is backed by the Fisher appraisal, and it may or may not be correct, but that does not make it a "mutual mistake."

The appraisal of real estate is not an exact science. The Church's appraiser looked carefully at nine other charter school leases in Pennsylvania, Maryland and New Jersey and based upon those rentals gave his opinion to the Church in 2008 that a fair rental amount was $14.50. The appraiser hired by PMCS, Jean Innamorati, found that the fair rental value of the PMCS lease was $15.00 per square foot on December 17, 2011. The fact that Mr. Fisher does not now agree with the other appraisers does not show that a mutual mistake existed as to the value per square foot of the Carriage Square property. This was a matter of opinion and negotiation. The Church had ample support for its "ask" price. The school's own appraiser supported it. A prudent charter school board may have sought a second opinion in 2012. A question hovering throughout this litigation has been whether the Pennsylvania Charter School Law adequately protects the taxpayer in the charter school's use of taxpayer funds. However, there is insufficient evidence that the Church was mistaken or completely off base in its analysis of the worth of its

building.

PMCS also contends that a mutual mistake existed as to the actual size of the Carriage Square property. The lease declares that the square footage rented to PMCS is as follows:

Article 2

Leased premises

For reference purposes, this lease applies to the following premises:

The entire building owned by the Shawnee Tabernacle Church, consisting of 72,239 square feet of area, except for the portion of the building consisting of 1,582.9 square feet as set forth on the plan attached, marked exhibit "A," plus the playground area which consists of 5,012.85 for a total rented area of 75,668.95 square feet.

Petitioner's exhibit 1, lease agreement, Article 2.

The lease thus identifies the leased area as 75,668.95 square feet. Mr. Fisher measured the leased building area as 61,816 square feet and the playground area as 3,420 square feet for a total of 65,236 square feet. The three appraisers, Fisher, (61,816 square feet, petitioner's exhibit 9, page 13, NT 97) Innamorati (65,000 square feet, petitioner's exhibit 8, page 10); and Tierney (65,000 feet in 2008, NT 152) all believed the area of the property to be 65,000 square feet or less. Fisher testified that measurements were taken for his appraisal, NT 99, and I find that his measurements are the most accurate.

Shawnee Tabernacle presented no evidence to support

a determination that the Carriage Square property is greater than 75,000 square feet. Accordingly, the court finds that PMCS has established that the parties were mutually mistaken as to the size of the rented property. The area of the leased Carriage Square property was a basic assumption of the lease agreement. The actual square footage is approximately 10,433 smaller than the area stated in article II. This mistake has had a material effect on the agreed upon performances of the parties. Finally, PMCS did not bear risk of the property being substantially smaller than was represented in the lease. Where a mutual mistake is found to exist, "...the injured party may acquire reformation of the contract or...avoid the contractual obligations." *Step Plan*, 12 A.3d at 410 (quoting *Loyal Christian Ben. Ass'n v. Bender*, 493 A.2d 760, 762 (1985)). The lease will be reformed to reflect a $910,304.00 yearly rent payment due by PMCS.[4]

## DECISION

And now, this 17th day of July, 2014, following a hearing and after considering the briefs and arguments of the parties, it is ordered as follows:

1. PMCS's request to have the lease declared "at-will" is granted. The lease term is at the will of the parties.

2. PMCS's request to have the lease reformed due to unconscionable rent is denied.

3. PMCS's request to have the lease reformed due to mutual mistake of the parties as to the appropriate price per square foot of the Carriage Square property is denied.

---

4. This is calculated by multiplying the Carriage Square property's 65,236 square feet by the value of the property per square foot, $14.00.

4. PMCS's request to have the lease reformed due to mutual mistake as to the area of the Carriage Square property is granted. The lease shall be reformed to reflect that the Carriage Square property is 65,236 square feet in size. PMCS's rent due for past and future rent from the inception of the lease until PMCS vacates the premises will be $913,304.00 per annum, payable in equal monthly payments of $76,108.66 under the reformed lease.