**Greg and Sandra BENNETT as Husband and Wife, Kurt and Carol Hoefferle, as Husband and Wife, Appellees**

v.

**A.T. MASTERPIECE HOMES AT BROADSPRINGS, LLC and Grant Colledge, Appellants.**

Superior Court of Pennsylvania.

Argued Jan. 31, 2012.
Filed March 6, 2012.

Christopher S. Underhill, Lancaster, for appellants.

Leo Wallace, York, for appellees.

BEFORE: GANTMAN, J., ALLEN, J., and MUNDY, J.

## OPINION BY GANTMAN, J.:

Appellant, Grant Colledge, appeals from the judgment entered in the York County Court of Common Pleas, in favor of Appellees in this action for breach of contract, breach of warranty, and violations of the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL").[1] In this appeal, Appellant asks us to determine whether the evidence was sufficient to permit a finding of personal liability and whether the court's decision to permit UTPCPL liability based on "misleading conduct" was an improper reading of Pennsylvania law. For the following reasons, we hold the evidence adduced at trial was sufficient for the jury to find that Appellant specifically agreed to assume personal liability on the contracts at issue. We further hold the court correctly instructed the jury on the relevant standard for the UTPCPL catchall provision when it stated "misleading conduct" could support a violation and later properly doubled the damages award pursuant to the UTPCPL. Accordingly, we affirm.

The relevant facts and procedural history of this case are as follows. In 2004, Appellees Greg and Sandra Bennett ("the Bennetts") and Kurt and Carol Hoefferle ("the Hoefferles") contracted with A.T. Masterpiece Homes at Broadsprings LLC ("A.T. Masterpiece")[2] for the construction of new residential homes in a development called Overpond Court. Appellant was the managing member of A.T. Masterpiece. During construction of the homes, both the Bennetts and Hoefferles noticed numerous building deficiencies. Appellant was the primary contact during the construction process and assured the Bennetts and the Hoefferles regarding the quality of the work on their homes. Appellant's assurances were specific, direct, and often in the form of personal guarantees. Once construction finished, Appellees discovered their newly-constructed homes were in

---

1. 73 P.S. § 201-1 *et seq.*

2. A.T. Masterpiece is not a party to this appeal.

various states of disrepair and structural failure.

The problems in the Hoefferles' house were mainly in the dormer above the garage. When Mr. Hoefferle noticed the dormer Appellant and A.T. Masterpiece had constructed did not correspond to the building plans and structural design, he raised the issue with Appellant. Appellant assured him that the dormer had been redesigned, and the final product would work fine. Mr. Hoefferle expressed continued concern, but Appellant certified the design and quality of the new dormer. After construction finished, the dormer was in such bad structural shape that Mr. Hoefferle had to install temporary bracing to avoid collapse. There were also deficiencies in other parts of their home. Nails protruded from sections of drywall and the floors were so poorly laid, a person could feel the joints move while walking. The windows were drafty and, on several occasions, the Hoefferles could smell gas coming from the basement.

Steven Yingst, an engineering expert who inspected the Hoefferles' home, stated the home had several items in violation of the housing code. Other aspects were code compliant but nevertheless poorly designed or constructed. Regarding the dormer, Mr. Yingst concluded the work did not comply with the structural specifications and had inadequate support in the framing. Mr. Yingst believed there would have been structural failure in the dormer if Mr. Hoefferle had not taken corrective action. In addition, Mr. Yingst noted the lumber used throughout the house was a poor grade of wood. The bad lumber led to insufficient floor support in several areas of the home, which caused the floors to sag, bounce, and flex. The insulation, height clearances, ventilation, and electrical systems were all in violation of the housing code. In total, Mr. Yingst esti-

mated repairs to the Hoefferles' home would cost approximately $64,000.00.

The Bennetts had similar experiences during the construction of their home. While visiting the house to check on its progress, Mrs. Bennett noticed a crack in the foundation. She also found water in the basement and traced the water to a crack in a basement doorframe. When Mrs. Bennett reported the crack to Appellant, he said he "will take care of it and will take care of you." The floorboards in other areas of the home were warped, and Mrs. Bennett brought it to Appellant's attention. Appellant made more guarantees regarding the flooring and repeated his intention to take care of both the specific problem and Mrs. Bennett's general concerns. Once construction finished and the Bennetts moved in to their new home, more problems arose. Mr. Bennett found kitchen tiles were cracked and felt the floors bounce as he walked across them.

Mr. Yingst also examined the Bennetts' home and found construction defects similar to those he had seen in the Hoefferles' residence. The floor joists were improperly installed and caused the flooring to sag and bounce. Like the Hoefferles, the lumber used in the Bennetts home was not grade stamped. The plumbing, electrical, and ventilation systems were in violation of the housing code. In Mr. Yingst's estimation, the Bennetts' home required $122,000.00 in repairs.

On May 2, 2007, the Bennetts and the Hoefferles (collectively, Appellees) filed suit against Appellant and A.T. Masterpiece for breach of contract, breach of warranty, and violations of the UTPCPL. Appellees alleged Appellant and A.T. Masterpiece built defective homes for Appellees and engaged in deceptive and dishonest practices during the construction process. After extensive discovery, the case proceeded to a bifurcated jury trial

in April 2011. At the conclusion of the first phase, the jury found Appellant and A.T. Masterpiece liable for breach of contract, breach of warranty, and violations of the UTPCPL. Further, the jury concluded Appellant's representations and guarantees regarding the homes exposed him to personal liability. The case then moved to the damages phase, where the jury found Appellant liable to the Hoefferles for $26,000.00 and to the Bennetts for $85,000.00. The court doubled the damages, pursuant to the UTPCPL, and assessed counsel fees of $3,250.00. As a result, the total judgment against Appellant was $173,250.00 for the Bennetts and $55,250.00 for the Hoefferles. On April 15, 2011, Appellant timely filed post-trial motions seeking a new trial, which the court denied on July 11, 2011. On July 22, 2011, Appellant timely filed a notice of appeal. The court ordered Appellant to file a concise statement of errors complained on appeal pursuant to Pa.R.A.P. 1925(b), and Appellant timely complied on August 9, 2011.

Appellant raises three issues for our review:

DID THE TRIAL COURT ERR BY PERMITTING THE JURY TO HOLD [APPELLANT] PERSONALLY LIABLE TO [APPELLEES] FOR BREACH OF CONTRACT AND BREACH OF WARRANTY WHEN HE DID NOT "SPECIFICALLY AGREE TO ASSUME LIABILITY"?

DID THE TRIAL COURT ERR BY PERMITTING THE JURY TO HOLD [APPELLANT] PERSONALLY LIABLE FOR BREACH OF THE UTPCPL WHEN THERE IS NO EVIDENCE OF ANY FRAUDULENT CONDUCT BY HIM?

DID THE TRIAL COURT ERR IN DOUBLING THE JURY'S AWARD UNDER THE UTPCPL WHEN THE COURT ITSELF STATED THAT [APPELLANT] WAS NOT, "AN ABSOLUTE CROOK WHO PREYED UPON INNOCENT PEOPLE WITH THE INTENT OF HAVING THEM SIGN A CONTRACT TO BUILD A HOME AND THEN ABSOLUTELY NOT PERFORMING THE CONTRACT," AND CONCLUDED, "FOR SURE IT WAS NEGLIGENT"?

(Appellant's Brief at 1–2).

■ In his first issue, Appellant maintains the evidence produced at trial did not support a finding that he had specifically agreed to assume personal liability for shortfalls on the building contracts. Instead, Appellant argues he should be shielded from personal liability because he was at all times acting only as an agent on behalf of a limited liability corporation, A.T. Masterpiece. Appellant claims any statements attributed to him (where he said "I will take care of it" or "I guarantee it") were simply figures of speech and did not amount to an express assumption of personal liability. Appellant concludes the court's decision to instruct the jury on personal liability based solely on his first-person, informal statements to Appellees was incorrect and prejudiced him to the extent he should receive a new trial. We disagree.

■ When reviewing post-trial motions seeking a new trial, we consider "whether the trial court made an erroneous ruling and, if so, whether the mistake constituted harmless error or whether Appellant suffered any prejudice." *Lockley v. CSX Transp. Inc.*, 5 A.3d 383, 388 (Pa.Super.2010), *appeal denied*, —— Pa. ——, 34 A.3d 831 (2011). "Consideration of all new trial claims is grounded firmly in the harmless error doctrine." *Rettger v. UPMC Shadyside*, 991 A.2d 915, 923 (Pa.Super.2010), *appeal denied*, 609 Pa. 698, 15 A.3d 491 (2011). "A new trial is

not warranted merely because some irregularity occurred during the trial or another trial judge would have ruled differently; the moving party must demonstrate to the trial court that he ... has suffered prejudice from the mistake." *Id.* at 923–24. "We will not reverse an order denying a new trial unless the trial court committed an error of law that controlled the outcome of the case." *Id.*

■■ "It is a basic tenet of agency law that an individual acting as an agent for a disclosed [principal] is not personally liable on a contract between the [principal] and a third party unless the agent specifically agrees to assume liability." *In re Estate of Duran,* 692 A.2d 176, 179 (Pa.Super.1997). Nevertheless, a person acting as an agent may assume personal liability on a corporate contract where he executes a contract in his own name or voluntarily undertakes a personal responsibility. *B & L Asphalt Industries, Inc. v. Fusco,* 753 A.2d 264, 270 (Pa.Super.2000).

In the present case, there was ample evidence presented at trial to lead the jury to find Appellant had assumed personal liability for part of the work performed on Appellees' homes. With respect to the Bennetts, Appellant reassured them on several occasions that he would take care of their concerns and made express promises guaranteeing the quality of their home. These guarantees did not occur in a vacuum but in the context of recurring building deficiencies which arose during construction of the Bennetts' house. Although the Bennetts officially contracted with A.T. Masterpiece, Appellant voluntarily assumed personal liability on the building contract when he guaranteed the final quality of the home. His statements were intended to calm the Bennetts' fears about the building deficiencies and reasonably led them to believe Appellant would personally ensure the completed home was built properly.

Appellant's guarantee to the Hoefferles regarding the redesign of the dormer had the same effect. By stating to Mr. Hoefferle that the dormer had been redesigned, and certifying the new design as structurally sound, Appellant augmented the original contract the Hoefferles had executed with A.T. Masterpiece. Appellant's statements had the effect of personally obligating him for the structural integrity of the dormer because he made the statements with the goal of securing the Hoefferles' continuing performance on the contract. Appellant voluntarily made the promises and at no time tried to distance himself from his statements, until the instant litigation. For these reasons, the court correctly concluded sufficient evidence existed to warrant a jury charge on Appellant's personal liability. Therefore, Appellant cannot obtain relief on his first issue.

In his second and third issues, Appellant argues the court incorrectly construed 73 P.S. § 201–2(4)(xxi), the UTPCPL catchall provision. Specifically, Appellant claims the court fundamentally misstated Pennsylvania law when it instructed the jury that "misleading conduct" could suffice to establish a catchall violation. Relying on *Skurnowicz v. Lucci,* 798 A.2d 788 (Pa.Super.2002), Appellant maintains the catchall section requires proof of common law fraud. As Appellees' evidence did not support a finding of fraud, Appellant asserts the court incorrectly permitted the UTPCPL claim to reach the jury and led to a verdict against Appellant based on a legally incorrect standard of "misleading conduct." Assuming the evidence was insufficient to support UTPCPL liability, Appellant concludes the court's decision to double the damages award pursuant to the UTPCPL was also erroneous and should be reversed.

In response, Appellees acknowledge *Skurnowicz,* but point to federal cases that hold allegations of deceptive conduct are sufficient to establish a violation of the catchall provision. The federal cases distinguish *Skurnowicz* and conclude the General Assembly altered the standard of liability for the catchall provision when it amended UTPCPL in 1996. Appellees ask this Court to adopt the rationale of those decisions and hold deceptive conduct can suffice to establish a violation of the catchall provision. For the following reasons, we conclude *Skurnowicz* does not control and agree with Appellees' arguments regarding the effect the 1996 amendment on the catchall provision of the UTPCPL.

■■■ Appellant's second and third issues involve statutory interpretation, raise a question of law, and are subject to *de novo* and plenary review. *Stoloff v. Neiman Marcus Group, Inc.,* 24 A.3d 366, 369 (Pa.Super.2011). Generally, with respect to statutes, "the object of all interpretation and construction is to ascertain and effectuate the intention of the General Assembly." 1 Pa.C.S.A. § 1921(a). "Because the legislature is presumed to have intended to avoid mere surplusage, every word, sentence, and provision of a statute must be given effect." *Allegheny County Sportsmen's League v. Rendell,* 580 Pa. 149, 163, 860 A.2d 10, 19 (2004). "Where words of later statute differ from those of a previous one on the same subject, they presumably are intended to have a different construction." *CSC Enterprises, Inc. v. State Police, Bureau of Liquor Control Enforcement,* 782 A.2d 57, 63 (Pa.Cmwlth. 2001) (citing *In re Walton's Estate,* 409 Pa. 225, 186 A.2d 32 (1962)). We may also assume the legislature does not intend a result that is absurd, unreasonable, or impossible of execution. 1 Pa.C.S.A. § 1922.

■■■ The UTPCPL is Pennsylvania's consumer protection law and seeks to prevent "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce...." 73 P.S. § 201–3.[3] The purpose of the UTPCPL is to protect the public from unfair or deceptive business practices. *Agliori v. Metropolitan Life Ins. Co.,* 879 A.2d 315, 318 (Pa.Super.2005). Our Supreme Court has stated courts should liberally construe the UTPCPL in order to effect the legislative goal of consumer protection. *Com., by Creamer v. Monumental Properties, Inc.,* 459 Pa. 450, 459, 329 A.2d 812, 816 (1974).

The UTPCPL provides a private right of action for anyone who "suffers any ascertainable loss of money or property" as a result of an unlawful method, act or practice. 73 P.S. § 201–9.2(a). Upon a finding of liability, the court has the discretion to award "up to three times the actual damages sustained" and provide any additional relief the court deems proper. *Id.* Section 201–2(4) lists twenty enumerated practices which constitute actionable "unfair methods of competition" or "unfair or deceptive acts or practices." 73 P.S. § 201–2(4)(i)–(xx). The UTPCPL also contains a catchall provision at 73 P.S. § 201–2(4)(xxi). The pre–1996 catchall provision prohibited "fraudulent conduct" that created a likelihood of confusion or misunderstanding. 73 P.S. § 201–2(4)(xvii).[4] In 1996, the General Assembly amended the UTPCPL and revised Section 201–2(4)(xxi) to add "deceptive conduct" as a prohibited prac-

---

**3.** The protections provided by the UTPCPL also apply to residential real estate transactions. *Growall v. Maietta,* 931 A.2d 667, 676 (Pa.Super.2007), *appeal denied,* 597 Pa. 717, 951 A.2d 1164 (2008).

**4.** Prior to 1996, the catchall provision was codified at 73 P.S. § 201–2(4)(xvii). It was recodified at 73 P.S. § 201–2(4)(xxi).

tice. *See* Act of Dec. 4, 1996, P.L. 906, No. 146, § 1 (effective Feb. 2, 1997). The current catchall provision proscribes "fraudulent **or deceptive conduct** which creates a likelihood of confusion or of misunderstanding." 73 P.S. § 201–2(4)(xxi) (emphasis added).

Pre-amendment decisions from this Court relied on the plain language of the UTPCPL to hold proof of common law fraud was necessary to state a claim under the catchall provision. *See Prime Meats, Inc. v. Yochim,* 422 Pa.Super. 460, 619 A.2d 769, 773 (1993), *appeal denied,* 538 Pa. 627, 646 A.2d 1180 (1994) (holding plaintiff must prove elements of common law fraud to recover under UTPCPL catchall because section forbids only "fraudulent" conduct).[5] After the UTPCPL was amended, however, this Court continued to refer to case law citing the pre-amendment version that required a plaintiff to prove common law fraud to recover under the UTPCPL catchall provision. *See Ross v. Foremost Ins. Co.,* 998 A.2d 648 (Pa.Super.2010) (stating catchall section requires proof of common law fraud); *Colaizzi v. Beck,* 895 A.2d 36 (Pa.Super.2006) (stating same); *Booze v. Allstate Ins. Co.,* 750 A.2d 877 (Pa.Super.2000), *appeal denied,* 564 Pa. 722, 766 A.2d 1242 (2000) (stating same); *Skurnowicz, supra* (stating same). Despite the addition of language regarding deceptive conduct, the post-amendment cases do not discuss the 1996 amendment in any detail, or consider what effect it might have on the catchall provision. *See id.*

Conversely, a line of cases from the Commonwealth Court have distinguished *Skurnowicz* and its progeny, and in effect questioned the soundness of those cases as applied to post-amendment catchall claims. *Commonwealth v. Percudani,* 825 A.2d 743, 746–47 (Pa.Cmwlth.2003) (holding 1996 Amendment to Section 201–2(4)(xxi) provides liability for deceptive conduct). *Percudani* examined both the text and legislative history of Section 201–2(4)(xxi) before holding the 1996 addition of "deceptive conduct" changed the standard for the catchall provision. *Id.* at 747. In light of the legislative changes, *Percudani* concluded any decision to retain the pre–1996 pleading standards for Section 201–2(4)(xxi) would render the words "deceptive conduct" superfluous and run contrary both to the rules of statutory construction and our Supreme Court's directive for liberal construction of the UTPCPL. *Id.* (stating we can presume legislature intended to avoid mere surplusage, and courts should give effect to all language within statute whenever possible). The Commonwealth Court cases view the 1996 addition of "deceptive conduct" as substantively altering the catchall provision and allowing for liability based on the less restrictive standard of "deceptive conduct." *Com. ex rel. Corbett v. Manson,* 903 A.2d 69, 74 (Pa.Cmwlth. 2006) (permitting catchall liability for deceptive conduct and rejecting Superior Court's continued interpretation of Section 201–2(4)(xxi) as requiring proof of common law fraud). *See also Com. v. TAP Pharmaceutical Products, Inc.,* 36 A.3d 1197 (Pa.Cmwlth.2011) (stating Commonwealth Court has adopted "deceptive" standard under post-amendment catchall section of UTPCPL because language of 1996 amendment signaled approval of less restrictive pleading requirements); *Penn-*

---

5. To state a claim for common law fraud, the plaintiff must show: (1) a representation; (2) material to the transaction at issue; (3) made falsely, with either knowledge or reckless disregard of its falsity; (4) with the intent to misleading another person or inducing justifiable reliance; and (5) an injury caused by the reliance. *Bortz v. Noon,* 556 Pa. 489, 499–500, 729 A.2d 555, 560 (1999).

*sylvania Dept. of Banking v. NCAS of Delaware, LLC*, 995 A.2d 422, 433 n. 28 (Pa.Cmwlth.2010) (applying "deceptive" standard for catchall provision and outlining split in interpretations of statute by Commonwealth and Superior Courts). In rejecting this Court's post-amendment interpretation of the catchall provision, the Commonwealth Court found *Skurnowicz* inapplicable to post-amendment cases because *Skurnowicz* did not acknowledge the 1996 amendment and relied on pre-amendment case law to hold the catchall section required proof of common law fraud. *Percudani, supra.*

Most Pennsylvania federal courts have similarly concluded the 1996 amendment lessened the degree of proof required under the UTPCPL catchall provision. *See Schnell v. Bank of New York Mellon*, 828 F.Supp.2d 798, 2011 WL 5865966 (E.D.Pa. Nov. 22, 2011) (stating deceptive conduct is sufficient to satisfy catchall provision); *Vassalotti v. Wells Fargo Bank, N.A.*, 732 F.Supp.2d 503, 510 n. 7 (E.D.Pa.2010) (noting Pennsylvania law is not entirely clear on issue but "courts in this district have held that the 1996 amendment to the catch-all provision of the UTPCPL added a prohibition on deceptive conduct that permits plaintiffs to proceed without satisfying all of the elements of common-law fraud"); *Wilson v. Parisi*, 549 F.Supp.2d 637 (M.D.Pa.2008) (accepting view that plaintiff can state claim under post–1996 catchall provision by alleging deceptive activity). The federal decisions have noted Pennsylvania law regarding the standard of liability under the UTPCPL catchall is "in flux," but predict that our Supreme Court would adopt an interpretation of the catchall provision that recognized the 1996 amendment made proof of common law fraud unnecessary in cases where a plain-

tiff alleges deceptive conduct. *Chiles v. Ameriquest Mortg. Co.*, 551 F.Supp.2d 393, 398–99 (E.D.Pa.2008). Like the Commonwealth Court, the federal courts examining this issue were persuaded by the revised statutory language of the catchall provision and our Supreme Court's directive to read the UTPCPL broadly. *Seldon v. Home Loan Services, Inc.*, 647 F.Supp.2d 451, 469 (E.D.Pa.2009). *Accord Genter v. Allstate Property and Cas. Ins. Co.*, 2011 WL 2533075 (W.D.Pa. June 24, 2011) (observing amendment to catchall provision adding prohibition of deceptive conduct allows plaintiff to succeed under catchall section by pleading either common law fraud **or** deceptive conduct); *Haines v. State Auto Property and Cas. Ins. Co.*, 2009 WL 1767534 (E.D.Pa. June 22, 2009) (outlining split in Pennsylvania law and assuming without deciding that plaintiff can establish catchall violation on "less than fraudulent conduct"); *Flores v. Shapiro & Kreisman*, 246 F.Supp.2d 427 (E.D.Pa.2002) (concluding proof of fraud was unnecessary because plaintiff alleged defendants' conduct was deceptive); *In re Patterson*, 263 B.R. 82 (Bankr.E.D.Pa.2001) (commenting court will not ignore amendment and addition of "deceptive conduct" because doing so would ignore legislative intent and make revised language redundant). *But see Rock v. Voshell*, 397 F.Supp.2d 616, 622 (E.D.Pa.2005) (noting uncertainty over requirements for UTPCPL catchall claim, citing *Booze* for proposition that plaintiffs still must prove common law fraud); *Piper v. American Nat. Life Ins. Co. of Texas*, 228 F.Supp.2d 553, 560 (M.D.Pa.2002) (relying on Prime Meats, Inc. as authority that Pennsylvania law requires proof of common law fraud to state claim under catchall provision).[6] More often, federal

---

**6.** Although some federal courts adhered to the rule that proof of common law fraud is still

required under the amended catchall provi-

decisions decline to follow this Court's post-Amendment precedent because the Superior Court cases relied on pre-amendment interpretations of the catchall section without acknowledging the 1996 amendment. *Seldon, supra* at 469 (choosing not to follow Superior Court view of post-amendment catchall section because court's case law did not discuss or recognize changes to law, specifically addition of "deceptive conduct" to statute); *Cohen v. Chicago Title Ins. Co.*, 242 F.R.D. 295 (E.D.Pa.2007) (rejecting post-amendment cases from Superior Court because they rely on authority that interpreted pre-amendment catchall provision).

█ The post-amendment version of the catchall provision applies to the instant case because Appellees instituted their claims in 2007, more than 10 years after the General Assembly amended the UTPCPL catchall provision. The post-amendment *i.e.* current catchall section prohibits "fraudulent **or deceptive conduct** which creates a likelihood of confusion or of misunderstanding." *See* 73 P.S. § 201–2(4)(xxi) (emphasis added). In its jury instructions, the trial court stated Appellees could recover on their UTPCPL claim if the jury concluded Appellant's actions were capable of being interpreted in a "misleading way." (*See* N.T. Trial, 4/6/11, at 187.) Notwithstanding prior case law on the catchall provision, our review of decisions from the Commonwealth Court, the federal courts interpreting Pennsylvania law, as well as the statutory language of the post-amendment catchall provision leads us to conclude the court's jury instruction regarding "misleading" conduct accurately set forth the standard of liability under the amended catchall provision.[7]

A contrary reading that adheres to the common law fraud requirement for cases arising under the post-amendment catchall provision ignores the textual changes of the 1996 amendment as well as the rules of statutory construction. Prior to 1996, the catchall section prohibited only "fraudulent conduct." The legislature's inclusion of "deceptive" in 1996 signaled that either fraudulent **or** deceptive conduct would constitute a catchall violation. The amendment also implied that deceptive conduct is something different from fraudulent conduct. *See CSC Enterprises, Inc., supra* (observing: "where words of later statute differ from those of a previous one on the same subject they presumably are intended to have a different construction"). Moreover, maintaining a standard that demands fraud even after the amendment would render the legislature's addition of "deceptive" redundant and meaningless in a manner inconsistent with well-established principles of statutory interpretation. *See Allegheny County Sportsmen's League, supra* (stating court should give effect to all language in statute and presume legislature did not intend mere surplusage). Overlooking the addition of "deceptive" would also neglect our Supreme Court's pronouncement that courts should liberally construe the UTPCPL. *See Monumental Properties, Inc., supra.* For these reasons, we hold deceptive conduct which creates a likelihood of confusion or

---

sion, the majority rule now permits catchall liability attaches for deceptive conduct.

**7.** The trial court might have relied on *Com. ex rel. Corbett v. Peoples Benefit Services, Inc.*, 923 A.2d 1230 (Pa.Cmwlth.2007) when giving its jury instructions. *Corbett* addressed a separate section of the UTPCPL. Nevertheless, the court's instruction was ultimately correct, and we can affirm it on an alternative basis. *See Devine v. Hutt*, 863 A.2d 1160, 1170 (Pa.Super.2004) (reiterating principle that appellate court may affirm decision of trial court on any basis if it is correct).

of misunderstanding can constitute a cognizable claim under Section 201–2(4)(xxi).

This Court's post-amendment decisions in *Ross*, *Colaizzi*, and *Skurnowicz* are distinguishable. Those cases may have arisen after the 1996 amendment and involved the post-amendment version of the catchall provision, but each case relies on a pre-amendment interpretation of the catchall section. For example, *Ross* cites *Skurnowicz* and *Sewak v. Lockhart*, 699 A.2d 755 (Pa.Super.1997) when stating the UTPCPL catchall provision requires proof of fraud. *See Ross*, *supra* at 654. *Colaizzi* and *Skurnowicz* also cite *Sewak* for the same proposition. *See Colaizzi*, *supra* at 39; *Skurnowicz*, *supra* at 794. The *Sewak* plaintiffs, however, filed their claim in 1994—before the legislature amended the catchall provision. Therefore, *Sewak* examined the pre–1996 version of the UTPCPL, which required proof of fraudulent conduct; that version is inapplicable to cases involving the post-amendment catchall provision. *Sewak*, *supra* at 761 (stating common law fraud is required to set forth claim under previous and now suspended Section 201–2(4)(xvii)). The citations to *Sewak* in *Ross*, *Colaizzi* and *Skurnowicz* would not be problematic if those cases had recognized the 1996 amendment, noted the new language, and addressed whether and in what way the addition of "deceptive conduct" affected the catchall provision. Those cases, however, merely refer to *Sewak* (either directly or indirectly) without discussing or even acknowledging the amended provision. Consequently, *Ross*, *Colaizzi*, and *Skurnowicz* are not binding to the extent they purport to interpret the post-amendment catchall provision of the UTPCPL.

*Booze* is the lone post–1996 case from this Court that arguably mentioned the amendment, but that case is likewise inapposite to the present case. In a footnote, *Booze* observed that the catchall provision was changed by legislative amendment to include "not only 'fraudulent' but 'deceptive' conduct as well." *Booze*, *supra* at 880 n. 6. *Booze* nevertheless stated proof of common law fraud was required to succeed under the catchall provision, citing the pre-amendment case of *Hammer v. Nikol*, 659 A.2d 617 (Pa.Cmwlth.1995). The court ultimately concluded "appellants have failed to state a cause of action **under Section 201–2(4)(xvii)**." *Id.* Significantly, *Booze* relied on a pre-amendment case (*Hammer*) and based its holding on Section 201–2(4)(xvii), the pre–1996 version of the catchall provision. *Id.* *Booze*, therefore, appears to have interpreted the pre-amendment catchall provision; its acknowledgement of the 1996 amendment was merely a comment on a change in the law, albeit one that did not affect that disposition.[8] *Id.* *See also Weiler v. SmithKline Beecham Corp.*, 53 Pa. D. & C.4th 449 (Pa.Com.Pl.2001) (Herron, J.) (holding 1996 amendment altered catchall provision to allow for violations based on deceptive conduct, distinguishing *Booze* because its conclusion was based on pre-amendment version of catchall section). We conclude *Booze* does not control the outcome of the present case either.

To summarize, Appellant's second issue is meritless. The court's jury instruction correctly set forth the relevant law when it stated "misleading conduct" could be a catchall violation. Based on the 1996 amendment, catchall provision liability can arise when the plaintiff alleges either

---

**8.** *Booze* involved a class action complaint against motor vehicle insurance carriers who allegedly failed to divulge statutorily mandated information to the consumer both at the time of the initiation of the insurance contract and upon later renewals. Nothing in the disposition in that case stated when the purported claims arose.

fraudulent **or** deceptive conduct. *See* 73 P.S. § 201–2(4)(xxi). To the extent *Ross, Colaizzi, Booze,* and *Skurnowicz* provide to the contrary, those cases are inapposite to the post-amendment catchall provision.

As there was sufficient evidence to support the jury's finding of liability under the catchall section of the UTPCPL, Appellant's third issue must also fail. The facts presented at trial showed Appellant made numerous specific representations to Appellees regarding the construction and ultimate quality of their homes. Despite Appellant's guarantees, he failed to deliver the quality he promised and both the Hoefferles and Bennetts received "brand new" homes in need of many thousands of dollars in repairs. The jury heard this evidence and concluded Appellant's conduct was deceptive or misleading. In deciding on a damages multiplier, the court recited the jury's findings and indicated its agreement with the verdict. The court noted the UTPCPL authorized treble damages but stated such a large award would not be appropriate in this case. Nevertheless, the court concluded Appellant's conduct was serious enough to warrant a double damages award. On these facts, the court acted within its discretion in rendering a damages multiplier. *See* 73 P.S. § 201–9.2(a); *Stokes v. Gary Barbera Enterprises, Inc.,* 783 A.2d 296, 299 (Pa.Super.2001), *appeal denied,* 568 Pa. 723, 797 A.2d 915 (2002) (concluding court properly assessed treble damages where defendant knowingly misrepresented used van as new and manipulated odometer to hide van's true mileage).

Based on the foregoing, we hold the evidence adduced at trial was sufficient to support the jury's finding that Appellant specifically assumed personal liability on the housing contracts. We further hold the court correctly instructed the jury on the relevant standard for the UTPCPL catchall provision, when it stated "misleading conduct" could constitute a violation, and then properly doubled the damages award under the UTPCPL. Accordingly, we affirm the judgment entered in favor of Appellees.

Judgment affirmed.