J-S70045-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| HOWARD E. COHEN AND EILEEN C. COHEN, Husband and Wife, | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| Appellants | : | |
| | : | |
| v. | : | |
| | : | |
| LONG & FOSTER REAL ESTATE, INC., | : | No. 698 EDA 2016 |

Appeal from the Judgment entered March 31, 2016
in the Court of Common Pleas of Delaware County,
Civil Division, No(s):  2014-9715

BEFORE:  OLSON, OTT and MUSMANNO, JJ.

MEMORANDUM BY MUSMANNO, J.:          **FILED NOVEMBER 23, 2016**

Howard E. Cohen and Eileen C. Cohen (collectively, "the Cohens"), husband and wife, appeal from the Judgment entered against them and in favor of their real estate broker, Long & Foster Real Estate, Inc. ("L&F"), in this action brought pursuant to Pennsylvania's Unfair Trade Practices and Consumer Protection Law ("UTPCPL").[1]  We affirm.

In its Opinion, the trial court set forth the factual and procedural history underlying the instant appeal, which we incorporate herein by reference.  **See** Trial Court Opinion, 4/29/16, at 1-5.

Following a bench trial, the trial court entered a verdict in favor of L&F and against the Cohens.  The Cohens filed post-trial Motions, which the trial court denied.  On February 16, 2016, the trial court denied the Cohens' post-trial Motions, after which the Cohens filed a Notice of Appeal, followed by a

---

[1] 73 P.S. § 201-1 *et seq.*

court-ordered Pa.R.A.P. 1925(b) Concise Statement of matters complained of on appeal. On March 31, 2016, the trial court entered judgment. Accordingly, we may consider the issue presented by the Cohens in this appeal. *See Commonwealth v. Cooper*, 27 A.3d 994, 1008 (Pa. 2011) (stating that "[a] notice of appeal filed after the announcement of a determination but before the entry of an appealable order shall be treated as filed after such entry and on the date thereof.") (citation omitted).

The Cohens present the following claim for our review:

> Did the [trial] court commit legal error and/or abuse its discretion by entering a [v]erdict in favor of [L&F] and against [the Cohens], based solely on the [trial] court's stated rejection of [the Cohens'] credible, unimpeached, uncontroverted and unrebutted expert testimony regarding the unreasonable conduct by the sales agent of [L&F] in underestimating the future settlement costs and monthly carrying charges, specifically[,] the ongoing real estate taxes, beginning from the date of a future settlement on a to-be-constructed new home?

Brief for Appellants at 2-3.

The Cohens argue that the testimony of their expert, Donald Weiss ("Weiss"), confirmed that, pursuant to 49 Pa. Code. § 35.334, it is a real estate broker's duty to provide the buyer with a statement of estimated settlement and carrying costs. Brief for Appellants at 14. The Cohens assert that pursuant to subsection 35.334(a), before an agreement of sale is executed, the broker is required to provide each party with a written estimate of reasonably foreseeable expenses that the party can be expected

- 2 -

to pay, including but not limited to taxes and assessments. ***Id.*** According to the Cohens, Weiss testified that

> a knowledgeable and experienced sales broker should have known in February 2010 that taxes go up annually, that the common level ratio increases in July prior to the next calendar year to which it would apply, that the school taxes increase as of July 1 of each year, that the other township and county taxes increase as of January 1 of each year, and that the taxes had increased by 9% from 2009 to 2010....

***Id.*** at 16. The Cohens argue that L&F should have projected this same 9% increase factor when it made forward-looking estimates of settlement costs and monthly carrying charges, including future real estate taxes. ***Id.*** The Cohens assert that, based upon the evidence presented by Weiss, and L&F's failure to counter this evidence, the trial court abused its discretion in not crediting Weiss's testimony. ***Id.*** at 17. The Cohens claim that L&F's conduct "deprived [them] of the fundamental fairness of having the material information to which they were entitled in order to make their purchase decision." ***Id.*** They further argue that they relied upon this "deceptive and misleading" information, and that the verdict should be reversed. ***Id.***

> As this appeal arises from a non-jury trial, we observe that
>
> with regard to factual determinations, the trial court acts as the factfinder in a bench trial and may believe all, part or none of the evidence presented. Issues of credibility and conflicts in evidence are for the trial court to resolve; this Court is not permitted to reexamine the weight and credibility determinations or substitute our judgment for that of the factfinder. Furthermore, the findings of the judge in a non-jury trial are given the same weight and effect as a jury verdict such that the court's findings will not be disturbed on appeal absent an abuse of discretion, error of law, or lack of support in the record. We

- 3 -

will not disturb the court's factual findings merely on the basis we would have reached a different conclusion; rather, our task is to "determine whether there is competent evidence in the record that a judicial mind could reasonably have determined to support the finding.

*Ruthrauff, Inc. v. Ravin, Inc.*, 914 A.2d 880, 888 (Pa. Super. 2006) (internal quotation marks and citations omitted). "Conclusions of law, however, are not binding on an appellate court[,] whose duty it is to determine whether there was a proper application of law to fact by the lower court. On pure questions of law, … our review is plenary." *Kohl v. PNC Bank Nat'l Ass'n*, 912 A.2d 237, 248 n.16 (Pa. 2006) (internal quotation marks and citation omitted).

In its Opinion, the trial court addressed this claim, and determined that it is without merit. *See* Trial Court Opinion, 4/29/16, at 11-15, 17-18. We agree with the sound reasoning of the trial court, as set forth in its Opinion, and affirm on this basis. *See id.*

Judgment affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/23/2016

- 4 -

**IN THE COURT OF COMMON PLEAS OF DELAWARE COUNTY, PENNSYLVANIA**
**CIVIL DIVISION**

| | |
|---|---|
| HOWARD E. COHEN<br>and<br>EILEEN COHEN h/w<br><br>v.<br><br>LONG & FOSTER REAL ESTATE, INC. | : NO. 14-009715<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: |

---

**HONORABLE CHRISTINE FIZZANO CANNON**     **FILED: April 29, 2016**

## OPINION

After a non-jury trial conducted on December 9, 2015, this Court entered an

Order/Verdict, on December 21, 2015, finding in favor of Defendant, Long & Foster Real

Estate, Inc. (hereinafter "Defendant") and against Plaintiffs, Howard E. Cohen and

Eileen Cohen, husband and wife (hereinafter "Plaintiffs"). On February 16, 2016, after

argument, this Court denied Plaintiffs' Motion for Post-Trial Relief. Plaintiffs filed an

appeal on March 2, 2016.

Plaintiffs purchased 245 Valley Ridge Road, Haverford Township, Delaware

County, Pennsylvania 19041 (hereinafter "the subject property"), on January 10, 2011,

for the sum of $1,113,444.04. Plaintiffs' Amended Complaint, filed December 10, 2014,

¶ 18. The subject property was a newly constructed residential home within the

Haverford Reserve project. Id. at ¶ 13. Defendant, Long & Foster Real Estate, Inc. was

the listing broker for the builder/developer of the Haverford Reserve project. Id. at ¶ 12. Notes of Testimony, p. 67. The agreement of sale between the Plaintiffs and Haverford Reserve, L.P. was fully executed on March 3, 2010. Exhibit D-5. Prior to execution of the sales agreement, Plaintiffs met with Jeannine M. Carleton, the sales manager for the Haverford Reserve project and a licensed real estate salesperson employed by Defendant. Plaintiffs' Amended Complaint, ¶¶ 7 and 8; Notes of Testimony, p. 68. On February 13, 2010, Ms. Carleton submitted to the Plaintiffs a written Buyer Settlement Cost Estimate, that she prepared, which contained information that the estimate for county, township and school district real estate property taxes for the property would amount to $17,719.33 annually. Plaintiffs' Amended Complaint, ¶ 15; Exhibit P-2; Notes of Testimony, p. 15-16. Plaintiffs claimed that the Defendant's agent, Ms. Carleton, made verbal representations that the real estate taxes for the property would be about 2 percent of the sales price. Notes of Testimony, p. 13. The Buyer Cost Estimate Sheet indicated that the property taxes were estimated to be 2.08 percent of the then-believed sale price of $850,000. Plaintiffs' Amended Complaint, ¶ 15; Notes of Testimony, p. 13, 17 and 35. Ms. Carleton testified that while she did not recall making any verbal representations regarding real estate taxes, if she made any representations, she would have told Plaintiffs that their taxes would be *approximately* 2.1 percent of the sales price. Notes of Testimony, p. 85 and 92. She also stated that she told the Plaintiffs that they should "check with the township". Notes of Testimony, p. 92. The Plaintiffs never verified the tax information. Notes of Testimony, p. 19.

2

The Plaintiffs signed the Agreement of Sale, on March 3, 2010, three weeks after they received the Buyer Settlement Cost Estimate. Notes of Testimony, p. 36. Due to an increased sale price caused by construction extras and upgrades, the Plaintiff, Howard Cohen, testified that he expected that their annual real estate taxes would amount to $23,382.32, based on the projected 2.1 percent of sales price tax estimate, as the final sales price was $1,113,444.04. Plaintiffs' Complaint ¶ 19; Notes of Testimony p. 23 and 40-41. The title company that handled the settlement on the subject property estimated the taxes to be $24,500.00, on the HUD-1 settlement sheet, a difference of $1,118.00 more than the Plaintiffs' expectation based on the Buyer Settlement Cost Estimate. Exhibit P-2; Exhibit P-4; Notes of Testimony, p. 42. After multiple tax assessment appeals, the annual taxes for 2014 amounted to $26,500.00, $3,117.68 a year higher than the Defendant's original 2010 estimate, or 2.38 percent of the final sales price. Plaintiffs' Amended Complaint, ¶23; Notes of Testimony, p. 26.

At the non-jury trial, Plaintiff, Howard E. Cohen, testified on his own behalf and reviewed his experience purchasing the subject property, the contract for sale, settlement, and the subsequent real estate tax proceedings. Notes of Testimony, pp. 8-63. Plaintiff called Jeannine Carleton, as of cross examination, who reviewed her efforts as the sales manager at the Haverford Reserve project. Notes of Testimony, pp. 63-100. Finally, Plaintiff called Donald J. Weiss, Esquire, an expert qualified by the Court to testify as a licensed real estate broker. Notes of Testimony, pp. 112-154.

Defendant presented the testimony of Andrea Baptiste, the managing broker of the Long & Foster office location in Doylestown, Pennsylvania, and Janice Robinson, a sales and administrative support assistant at the Haverford Reserve project for the Goldenberg Group. Notes of Testimony, pp. 159-167 and 169-180.

Plaintiff introduced and admitted into the record at trial: certain pleadings (P-1); the Buyer Settlement Cost Estimate (P-2); the agreement of sale, dated March 3, 2010 (P-3); the HUD-1 Settlement Statement (P-4); selected provisions of the Pennsylvania Real Estate Agent Professional Conduct Regulations under the Pennsylvania Real Estate Licensing and Registration Act, 63 P.S. §455.101 et. seq., (P-5); historical property real estate assessments for the Haverford Reserve project (P-6); historic common level ratios, tax rate tables, bond market yields, and a portion of Modern Real Estate Practice in PA (P-7); Plaintiffs' statement of attorney's fees (P-8); a Summary of Plaintiffs' Compensatory Damage Calculations by Donald Weiss, Esquire, (P-9); and the deposition transcript of Jeannine Carleton (P-10). *See* Plaintiffs Exhibit P-1 through P-10.

The Defendant introduced and admitted into evidence: the agreement of sale (D-5); the HUD-1 Settlement Statement (D-9); the Public Offering Statement for the Haverford Reserve (D-6); the Buyer Settlement Cost Estimate (D-8), Plaintiffs' Response to Defendant's Request for Production of Documents (D-10); and an Options List for the subject property (D-12). *See* Defendant's Exhibits D-5, D-6, D-8, D-10 and D-12.

4

Plaintiffs' Amended Complaint did not include claims for negligence, negligent misrepresentation, breach of contract, or fraud, but rather, the Amended Complaint contained only one count, for claimed violation of Pennsylvania's Unfair Trade Practices and Consumer Protection Law, 73 P.S. §201-1 et. seq. (hereinafter "UTPCPL"). *See* Plaintiffs' Amended Complaint, ¶¶ 26-63. Plaintiffs' Amended Complaint sought relief under subsections 201-2(4)(v) and (xxi) of the Act. At trial, Plaintiffs also sought relief under section 201-2(4)(ii).

The UTPCPL prohibits "Unfair methods of competition" and "unfair or deceptive acts or practices" as follows, in relevant part:

> (4) "Unfair methods of competition" and "unfair or deceptive acts or practices" mean any one or more of the following: . . .
>
> > (ii) Causing likelihood of confusion or of misunderstanding as to the source, sponsorship, approval or certification of goods or services; . . .
> >
> > (v) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation or connection that he does not have; . . .
> >
> > (xxi) Engaging in any other fraudulent or deceptive conduct which creates likelihood of confusion or of misunderstanding.

73 P.S. Section 201-1 and 201-2(4)(ii), (v) and (xxi).

After submission of post-trial memoranda, this Court entered its Verdict/Order on December 21, 2015 finding in favor of the Defendant and against Plaintiffs.

Plaintiffs complain on appeal as follows:

1. This Honorable Court committed error of law or abused its discretion, if and to the extent that its verdict was based on a ruling that the parol evidence

rule or contract integration clause barred Plaintiffs' PA Unfair Trade Practices and Consumer Protection Law ("UTPCPL") claim against Defendant.

2. This Honorable Court committed error of law or abused its discretion, if and to the extent that its verdict was based on a ruling that Plaintiffs' UTPCPL claim required proof of an intentional action by Defendant.

3. This Honorable Court committed error of law or abused its discretion, if and to the extent that its verdict was based on a ruling that there was insufficient evidence of liability as to Plaintiffs' UTPCPL claim against Defendant.

4. This Honorable Court committed error of law or abused its discretion, if and to the extent that its verdict was based on a ruling that there was insufficient evidence of damages as to Plaintiffs' UTPCPL claim against Defendant.

5. This Honorable Court committed error of law or abused its discretion, if and to the extent that its verdict was based on a ruling that Plaintiffs allegedly misrepresented their actual purchase price for the subject real estate in any manner, or otherwise allegedly violated any section of the Real Estate Settlement Procedures Act, and/or the Pennsylvania real estate transfer tax laws.

6. This Honorable Court committed error of law or abused its discretion, if and to the extent that its verdict was based on a ruling which considered any matter other than the differential between (a) the proportionate annualized real estate taxes which Defendants actually had estimated for Plaintiffs at the time before Plaintiffs had committed to purchase the home, and (b) the proportionate annualized real estate taxes which Defendant should have been able to estimate at the time before Plaintiffs had committed to purchase the home, using publicly available information.

7. This Honorable Court committed error of law or abused its discretion, if and to the extent that its verdict was based on a ruling that any portion of the testimony proffered by any of Defendant's fact witnesses was accepted as expert testimony.

8. This Honorable Court committed error of law or abused its discretion, if and to the extent that its verdict was based on a ruling that any portion of the unrebutted testimony proffered by any of Plaintiffs' fact and expert witnesses was deemed not credible.

Plaintiff's Concise Statement of Errors and/or Rulings Complained of an Appeal, filed March 23, 2016.

6

First, this Court addresses the Plaintiffs' complaint that this Court erred if it based its decision on a ruling that the parol evidence or contract integration clause barred Plaintiffs' UTPCPL claim against the Defendant. This Court did not exclude any testimony or exhibits due to application of the parol evidence rule.

Next, the Plaintiffs complain on appeal that this Court erred if it based its decision on a ruling that Plaintiffs' UTPCPL claim required proof of an intentional action by Defendant. This Court did not make such a ruling and did not require proof of intentional wrongdoing.

> The UTPCPL is Pennsylvania's consumer protection law and seeks to prevent "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce..." The purpose of the UTPCPL is to protect the public from unfair or deceptive business practices. Our Supreme Court has stated courts should liberally construe the UTPCPL in order to affect the legislative goal of consumer protection. DeArmitt v. New York Life Ins. Co., 73 A.2d 578, 591 (Pa. Super. 2013).

>> The UTPCPL provides a private right of action for anyone who "suffers any ascertainable loss of money or property" as a result of "an unlawful method, act or practice". Upon a finding of liability, the court has the discretion to award "up to three times the actual damages" and provide any additional relief the court deems proper. Section 201-2(4) lists twenty enumerated practices which constitute actionable "unfair methods of competition" or "unfair or deceptive acts of practices." The UTPCPL also contains a catchall provision at 73 P.S. 201-2(4)(xxi). The pre-1996 catchall provision prohibited "fraudulent conduct" that created a likelihood of confusion or misunderstanding. In 1996, the General Assembly amended the UTPCPL and revised Section 201-2(4)(xxi) to add "deceptive conduct" as a prohibited practice. The current catchall provision proscribes "fraudulent or deceptive conduct which creates the likelihood of confusion or of misunderstanding."

7

Id. at 591-592 (*citing* Bennett v. A.T. Masterpiece Homes at Broadsprings, 40 A.3d 145, 151-52 (Pa. Super. 2012) (internal citations omitted)). *See also* Agliori v. Metropolitan Life Ins. Co., 879 A.2d 315, 318 (Pa. Super. 2005).

In order for a private individual to bring a private claim under Unfair Trade Practice and Consumer Protection Law (UTPCPL), that individual must first establish that he or she is a purchaser or lessee, that the transaction is dealing with goods or services, that the good or service was primarily for personal, family, or household purposes, and that he or she suffered damages arising from the purchase or lease of goods or services; to prevail, **the individual must then prove that the defendant was engaged in unfair methods of competition and unfair or deceptive acts or practices** and that the transaction constituted trade or commerce within the meaning of the UTPCPL. Fazio v. Guardian Life Ins. Co. Of America, 62 A.3d 396, hn 3 (Pa. Super. 2012)(*citing* 73 P.S. § 201–1)) (emphasis added).

. . . the UTPCPL **plaintiff must still prove justifiable reliance and causation**, because the legislature "never intended [the] statutory language directed against consumer fraud to do away with the traditional common law elements of reliance and causation." DeArmitt v. New York Life Ins. Co., 73 A.2d at 592. (*citing* Toy v. Metropolitan Life Insurance Company, 928 A.2d 186, 202) (emphasis added).

Plaintiffs claim that the Defendant violated the UTPCPL by:

> . . . (ii) Causing likelihood of confusion or of misunderstanding as to the source, sponsorship, approval or certification of goods or services; . . . 73 P.S. Section 201-1 and 201-2(4)(ii)

Plaintiffs did not establish that the Defendant's caused likelihood of confusion or of misunderstanding as to the source, sponsorship, approval or certification of goods or services. In fact, there is no evidence of record regarding the source, sponsorship, approval or certification of the subject property.

Plaintiffs further claim that the Defendant violated the UTPCPL by:

> . . . (v) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have or

8

that a person has a sponsorship, approval, status, affiliation or connection that he does not have; . . .

73 P.S. Section 201-1 and 201-2(4) (v).

Plaintiffs, however, failed to meet their burden of proof to establish a violation of this section.

Specifically, the Plaintiffs complain that the real estate agent's alleged verbal representations, that the estimated real property taxes on the subject property would be *about* 2.0 percent, and/or the written *estimate*, that the real estate taxes would be *about* 2.1 percent of the purchase price, were representations of a characteristic that the subject property did not have. However, the real estate agent, Ms. Carleton, testified credibly that any verbal representations that she may have made to Plaintiffs about real estate taxes, although she did not recollect any, would have included the word *approximately*. Notes of Testimony, pp. 85 and 92. In fact, Plaintiff, Howard Cohen, asserted that she stated that the real estate taxes would be *about* 2 percent of the sale price. Notes of Testimony, p. 13. In addition, the record makes clear that the Buyer Settlement Cost Estimate provides that the *estimated* real estate taxes would be about 2.1 percent of the purchase price, or $17,719.33, only $5.33 less than the Plaintiffs' own expert testified his calculations would have concluded, if providing an estimate at the same time.[1] *See* discussion, *infra*, pp. 11 - 15. Exhibit P-2. In addition,

---

[1] The Plaintiffs' expert testified that his calculation would have resulted in an estimate of $17,714.00 for February 2010. See Notes of Testimony, pp. 140-142. The expert opined that to determine taxes, you should first determine what the common level ratio factor is, then multiply the value of the property (in this case the sales price) by the common level ratio factor (to come up with an assessment) and then multiply the assessment by the millage. Notes of Testimony, p. 116.

9

the real estate taxes escrowed by the title company reflected an annual amount of $24,500.00 in January 2011, and the actual real estate taxes in 2014 (four years after the estimate was provided and three years after settlement) were set at 2.38 percent of the total purchase price, $26,500.00. Notes of Testimony, pp. 31-31; Plaintiff's Amended Complaint, ¶23. This Court finds that the alleged misrepresentation of a characteristic of the property made by Defendant's agent of the estimated real estate taxes in 2010 was not a misrepresentation at all and there was no likelihood of confusion or misunderstanding. *See* discussion, *infra*, pp. 11-15.

Furthermore, the Plaintiffs in this matter argue that the Defendant is liable pursuant to the "catch-all provision" of the Unfair Trade Practices and Consumer Protection Law ("UTPCPL") that provides: "(xxi) engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding." 73 P.S. Section 201-2(4)(xxi). "In Bennett v. A.T. Masterpiece Homes at Broadsprings, LLC, 40 A.3d 145 (Pa. Super. 2012), the [Pennsylvania Superior Court] panel concluded that a 1996 . . . amendment to the catch–all provision that added the language "or deceptive conduct" changed the requirement from proving actual fraud to merely proving deceptive conduct". Milliken v. Jacono, 60 A.3d 133 (Pa. Super 2012) (*citing* Bennett v. A.T. Masterpiece Homes at Broadsprings, LLC, 40 A.3d 145, 150-153 (Pa. Super. 2012)). The Pennsylvania Superior Court has held that "'misleading conduct' could be a catch[-]all violation." Bennett at 155.

10

Even with this lowered burden, the buyers in the instant case did not prove their claim for violation of the UTPCPL as the Plaintiffs failed to provide any evidence that the Defendant engaged in deceptive or misleading conduct. The Plaintiffs in this case made a calculation of an estimate of settlement costs that included a figure for *estimated* real estate taxes that was only $5.33 different than that which the Plaintiffs' expert calculations would have established. *See* Notes of Testimony, pp. 140-141. There was simply no evidence of deceptive conduct or misleading conduct.

Third, the Plaintiffs complain on appeal that this Court erred in finding that there was insufficient evidence of Defendant's violation of the UTPCPL. This Court did, in fact, conclude that the Plaintiffs did not establish any violation of the UTPCPL by Defendant, and, in addition to that noted above, this Court further notes:

By using the formula proposed by the Plaintiffs' expert, by the expert's own admission on cross-examination, the Defendant's calculation at the time it was made, February, 2010, should have been $17,714.00. Notes of Testimony, pp. 140-141. Again, what Defendant did estimate was $17,719.33, a difference of $5.33. Id. Plaintiffs' expert actually states that the estimate provided to the Plaintiffs on February 17, 2010 was the correct calculation. Id., p. 137 and 141. Plaintiffs' expert, however, criticized the Defendant for providing the estimate for February 2010, when the settlement did not take place until January 2011. Id. at p. 141. However, Plaintiffs' expert admitted that a real estate agent or broker must provide the estimate at or before the Agreement of Sale is executed in accordance with 49 Pa. Code 35.334. Id. at

11

142. The Agreement of Sale in this matter was signed on March 3, 2010. Exhibit D-5. Title 49, Section 35.334 of the Pennsylvania Code provides that a real estate agent is required to provide an estimate of closing costs **before an Agreement of Sale is executed**. 49 Pa. Code 35.334 (a) (emphasis added); Notes of Testimony, p. 142. This section further provides that the estimate provided "shall be as accurate as may be reasonably expected of a person having knowledge of, and experience in, real estate sales." 49 Pa. Code 35-334(b). The Plaintiffs' expert claimed that Ms. Carleton should have known that her estimate would not accurately reflect the estimate of taxes for the subject property because she provided the number for February 2010 instead of the number when the settlement was expected to take place, after the annual change in common level ratio factor would have been published. Notes of Testimony, pp. 129-130, p. 143. This argument is without merit.

Plaintiffs' expert testified that a reason that the Plaintiffs "got wacked" on their real estate taxes was because the common level ratio factor changed after they signed the Agreement of Sale and before settlement. Notes of Testimony, p. 135. However, this Court finds that Defendant's agent simply could not predict such a change. Even the table of common level ratio factors admitted into evidence by the Plaintiffs indicated that some years the common level ratio factor rises, some years it falls and some years it remains the same. Exhibit P-7. The information becomes available in or about July of a given year. Notes of Testimony, p. 117 and 132. A common level ratio factor is the "mathematical reciprocal of the actual common level ratio". Exhibit P-7. These real estate valuation factors are based on sales data compiled by the State Tax Equalization

12

Board". Id. Plaintiffs' expert claimed that we "all know that taxes are going up . . . school taxes . . .[s]o they should have been basing it on what the millages would have been for school taxes at the end of the year. And the CLR changes every July and so do school taxes change every July . . .[T]hey should have redone it in July." Notes of Testimony, pp. 129-130. This Court found Ms. Carleton had to provide the estimate before the Agreement of Sale was executed. This Court further found that is not reasonable to expect a real estate agent with experience in real estate sales to predict the change in school tax millage[2] or the annual rise or fall in the common level ratio factor.[3] It is further unreasonable to require that the agent include that prediction in his/her calculation of an estimate of settlement costs many months before the change, if any, in the CLR and change in school tax millage are made public. The Buyer Settlement Cost Estimate was **required** to be provided before the Agreement of Sale was signed, redoing it in July would not have changed the Agreement that had already been executed by the Plaintiffs. This Court rejects the expert's testimony indicating that such a prediction and inclusion would be reasonably included in such an estimate and rejects the conclusion that the calculation should have been redone in July, months after the Plaintiffs have entered into the Agreement of Sale.

The agreement of sale was signed in March 2010. Exhibit D-5. Plaintiffs' expert claimed that Defendant's agent should have projected the taxes after July 2010

---

[2] Plaintiffs' expert testified that school tax millage is set in May and takes effect July 1st. Notes of Testimony, p. 117.

[3] Plaintiffs' expert testified that the common level ratio factor changes in or about June or July. Id. at p. 135.

13

because real estate tax rates and common level ratio factors would change before settlement on the subject property. Notes of Testimony, p. 135. However, a reasonable real estate agent with experience in real estate sales cannot be expected to predict those changes and Plaintiffs failed to establish Defendant was required to change the pre-agreement estimate. It must also be noted that the settlement date for this property had been extended. Exhibit P-4; Exhibit D-5. The anticipated closing date was in November of 2010. Exhibit D-5. The settlement took place in January 2011. There is no evidence that anyone could have known that the settlement date would be extended, or to what date it would be extended. However, according to Plaintiffs' expert's theory, the real estate agent providing the estimate would reasonably be responsible for predicting when the property settlement would take place for the subject property or providing a new estimate every time the millage, tax rate or CLR change. This Court does not accept this assertion and the Plaintiff did not point to any case law, statute, rule or regulation governing real estate agents that would have established such a requirement.

The Public Offering Statement, incorporated into the Agreement of Sale, provided that: "The assessed value of the completed Units for real estate tax purposes is not yet known. The assessed value of the Units may vary depending on their size, features, and cost." Exhibit D-6. Furthermore, the Buyer Estimate Settlement Cost sheet clearly states that the "Information herein deemed reliable but not guaranteed." Exhibit P-2. The title of the document itself makes clear that it is an estimate. Id. The Buyer Settlement Cost Estimate indicated that "[t]he above figures are approximate

14

settlement costs and will be adjusted as of the date of final settlement, if necessary."
Exhibit P-2. The figures were adjusted for the HUD-1 Settlement Sheet at the final
settlement. Exhibit P-4.

Plaintiffs' expert also testified that "[e]very new property is over-assessed when
it comes out of the block" and that the subject property was over-assessed. Notes of
Testimony p. 152. An over-assessment, of course, would make the taxes higher than
anticipated. Under Plaintiffs' expert's theory, a real estate agent would also have to
guess what the over assessment might be for a given property in order to properly
estimate the real property taxes.

Fourth, Plaintiffs have claimed that this Court erred, if it based its decision upon
a finding that there was insufficient evidence of damages as to Plaintiffs' UTPCPL claim
against Defendant. This Court did not and need not address the sufficiency of evidence
of damages in this matter, as the Plaintiffs have failed to establish a violation of any
section of the UTPCPL.

Fifth, Plaintiffs complain on appeal that this Court erred if it based its decision on
a finding that the Plaintiffs misrepresented their actual purchase price for the subject
property, or that Plaintiffs violated the Real Estate Settlement Procedures Act or
Pennsylvania's real estate transfer laws. This was not a conclusion or finding that this
Court made in this matter.

15

Next, Plaintiffs also claimed on appeal that this Court erred if its decision was based upon a finding that the testimony of Defendant's fact witnesses was expert testimony. This Court did not consider the testimony of any of Defendant's witnesses to be expert testimony. However, this Court did not accept Plaintiffs' expert's testimony that the Defendant should have modified her estimate, and did not find that the Defendant's actions, through its agent, were deceptive or misleading in any way. *See* discussion, *supra*, pp. 11-15.

Plaintiffs also complain on appeal that this Court erred by basing its decision on any matter other than the differential between "(a) the proportionate annualized real estate taxes which Defendants actually had estimated for Plaintiffs at the time before Plaintiffs had committed to purchase the home, and (b) the proportionate annualized real estate taxes which Defendant should have been able to estimate at the time before Plaintiffs had committed to purchase the home, using publicly available information." Plaintiffs' Concise Statement of Errors and/or Rulings Complained of an Appeal, filed March 23, 2016, ¶ 6. This complaint by Plaintiffs on appeal seems to imply that any deviation between the two numbers is a violation of the UTPCPL. This Court does not accept this theory. The Defendant must prove misleading conduct and has failed to do so. A deviation of $5.33 proves that Ms. Carleton's was a good faith and reasonable estimate, not a deceptive act that would have constituted a violation of the UTPCPL. In addition, it must be noted that even Plaintiff, in its Concise Statement of Matters Complained of On Appeal, only suggests that the relevant inquiry is that figure that was provided and that figure that should have been provided at the time *before* Plaintiffs'

16

committed to purchase the house, March 3, 2010. Plaintiffs' Concise Statement of Errors and/or Rulings Complained of an Appeal, filed March 23, 2016, ¶ 6. As such, Plaintiff does not seem to be suggesting that the estimate should have been redone after execution of the agreement of sale and this Court agrees that it was not required to be recalculated after the CLR and school tax information became available in July 2010.

Lastly, Plaintiffs complain that this Court erred by ruling that any portion of the testimony proffered by any of the Plaintiffs' fact and expert witnesses was deemed not credible. The relevant facts to this Court's analysis are not in dispute. This Court accepts that the Defendant estimated, in March 2010, that the real estate taxes for a $850,000.00 home would be $17,719.33 at settlement and accepts that the actual real estate taxes for a $1,113,444.04 home in this matter were $26,500 in 2014. However, this Court finds that the Defendant made a good faith estimate as required by 49 Pa. Code 35.334. This Court does not agree that it would have been reasonable for the Defendant to predict the change in the common level ratio factor or the school tax millage when making her estimate before the Agreement of Sale was signed. As such, based on the calculations used by the Defendant's expert, the proper estimate, made in March 2010, would have been $17,714.00. The minor difference between a $17,719.33 estimate and a $17,714.00 estimate cannot be deemed a misrepresentation, deceptive or misleading. The representation made by the Defendant was reasonable and accurate at the time that it was made and the Buyer Settlement Cost Estimate makes clear to the Plaintiffs that that the figures provided are an estimate, are the

17

*approximate* settlement costs, and "will be adjusted as of the date of final settlement, if necessary." Exhibit P-2 (emphasis added). The numbers were adjusted by the title company on the HUD-1 Settlement Sheet to reflect the annual taxes to be $24,500, still lower than the actual taxes that resulted after what Plaintiffs' own expert calls the over-assessment of the subject property, and still lower than the amount the taxing authorities were willing to accept in 2014, $26,500. The real estate agent could not have been expected to predict the change in CLR, the change in school tax millage, the change in settlement date, the over-assessment, or the amount the taxing authorities would be willing to accept with exact precision and this Court finds that the estimate that was made was made at the appropriate time, was reasonable under the circumstances and did not constitute a deceptive or misleading act.

BY THE COURT:

CHRISTINE FIZZANO CANNON, J.

2016 MAY -2 PM 1:59
OFFICE OF
JUDICIAL SUPPORT
DELAWARE CO. PA.

FILED JM

18